PEOPLE v DeRUSHIA

Docket No. 52354. Submitted April 9, 1981, at Grand Rapids.—Decided September 10, 1981.

Mary J. DeRushia was charged with second-degree murder and convicted of voluntary manslaughter in the Calhoun Circuit Court, Stanley Everett, J. The decedent was the defendant's husband. At trial, over defendant's objection, defendant's sister-in-law testified regarding a conversation she had with the defendant approximately nine months before the fatal shooting. Defendant allegedly told her sister-in-law of disagreements between herself and the decedent regarding his strict disciplining of her older children. Defendant allegedly said that she once had pointed a gun at him while he was sleeping and "would have killed him". At the time of this conversation, defendant and the decedent were divorced. They subsequently remarried. Defendant appealed, alleging that the court erred in allowing this testimony. *Held:*

The testimony is hearsay and is admissible only under a recognized exception. The conversation does not fit the state-of-mind exception. The state-of-mind exception to the hearsay rule is limited to the defendant's then-existing mental, emotional or physical condition and expressly precludes a statement of memory or belief. The statements do constitute an admission. However, to be admissible as an admission, the statements must be relevant and not too remote. Evidence is relevant when it is sufficiently probative of a fact in issue to offset the prejudice its admission produces. The testimony was more prejudicial than probative and should have been excluded.

Reversed and remanded.

1. EVIDENCE — HEARSAY — RULES OF EVIDENCE.
   Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted (MRE 801).

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 493, 497.
[2] 29 Am Jur 2d, Evidence § 650.
[3] 29 Am Jur 2d, Evidence §§ 600, 601, 611, 617.
   Admissibility of party's own statement under Rule 801[d][2][A] of the Federal Rules of Evidence. 48 ALR Fed 922.
[4] 29 Am Jur 2d, Evidence §§ 251-253.

2. EVIDENCE — HEARSAY — STATE-OF-MIND EXCEPTION — RULES OF
   EVIDENCE.

The state-of-mind exception to the hearsay rule is limited to the
defendant's then-existing mental, emotional or physical condi-
tion and expressly precludes a statement of memory or belief
(MRE 803[3]).

3. EVIDENCE — HEARSAY — ADMISSIONS — RULES OF EVIDENCE.

A statement is not hearsay if it is offered against a party and is
his own statement; a statement which is an admission may be
admitted into evidence if it is more probative than prejudicial
and is not too remote (MRE 801[d][2][a]).

4. EVIDENCE — RELEVANCY.

Evidence is relevant when it is sufficiently probative of a fact in
issue to offset the prejudice its admission produces.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Conrad J. Sindt,*
Prosecuting Attorney, and *John H. MacFarlane,*
Assistant Prosecuting Attorney, for the people.

*Gail Rodwan,* Assistant State Appellate De-
fender, for defendant on appeal.

Before: MACKENZIE, P.J., and V. J. BRENNAN
and M. F. CAVANAGH, JJ.

V. J. BRENNAN, J. Defendant was convicted by a
jury of voluntary manslaughter in violation of
MCL 750.321; MSA 28.553. She was sentenced to a
prison term of 5 to 15 years and is appealing as of
right from this conviction.

Following a violent argument between defendant
and her husband, Robin DeRushia, defendant shot
and killed her husband on May 27, 1979. The
decedent, a veteran who lost a part of one leg in
Viet Nam, suffered chronic problems with his legs,
his nerves and with alcohol. There was a great
deal of testimony as to decedent's volatile nature
and hair-triggered temper. The record was replete

with undisputed testimony which corroborated defendant's testimony that decedent had committed numerous past acts of physical violence toward her. There also was testimony that he had physically mistreated defendant's children. Testimony was submitted that the decedent had a reputation in the community as a violent and hot-tempered man.

On the night of the fatal shooting defendant and her husband had gone out socially. According to defendant's testimony, the following events transpired. While out, they ran into defendant's brother who allegedly insulted the decedent causing him to become angry. In retaliation, the deceased struck the defendant and said "That's for your brother". They then returned home in acrimonious moods. The defendant went to the basement recreation room with the intention of sleeping there. This angered the husband who insisted she sleep upstairs in the bedroom. Angry words were exchanged and the deceased grabbed the defendant by the hair and threw her on the floor. The defendant called for the deceased's son to come to her aid. The deceased persisted in his efforts to force defendant to return upstairs to their bedroom by pulling her by the hair, kicking her and dragging her up the basement stairwell. Defendant resisted in her efforts to remain in the basement recreation room. Sometime during this fracas, the decedent's son and defendant's daughter saw and heard the fight and left the house on their own accord to get the police but returned to the home to get the car keys. By this time, defendant and deceased had scuffled up to the top of the basement stairs. At this point, defendant slapped the deceased causing his glasses to fall off. Deceased then told the defendant, "This is the last

time you're going to hit me. You'll never hit me again. You'll never do anything to me again." Defendant ran into a bathroom and locked herself in. Deceased disassembled the bathroom door and began striking her again. Defendant then ran into the master bedroom with the deceased following her.

"So, I got up and I ran into my—to the bedroom—to the master bedroom. And he come in there, and he kept hollering, 'This is the end. This is all. This is all you're ever going to do.' He said, 'This is the last thing.' So, he ripped my dress off. And I had a little, tiny gold watch on, and he ripped that off of me. And he threw me on the bed. And he said he was going to get the knife—he was going after the knife. And, he said, 'This is the last of it.'

\* \* \*

"He threw me on the bed, and he kept saying, \* \* \* 'It's all over for you. This is the end.' I got—. I was pretty terrified. He was in a different kind of rage than I had ever seen him before.

\* \* \*

"I was petrified of him. I had been afraid of him before. I'd been scared of him, but not like this night— just the tone of his voice—the way he was acting—it just seemed like he was—was not—it wasn't Rob. He was just like he was out of his mind for somethink [sic] that I—was not even my fault. I did not do anything.

\* \* \*

"He was going to get that knife. \* \* \*
"I did not want to get hurt. I did not want to get beat anymore. I did not want to get hurt."

Defendant reached under the mattress, pulled out a gun, ran down the hall and shot the decedent. Four bullets entered the victim's body from the back; the first bullet being the cause of death. It was stipulated that the deceased's blood speci-

men contained .21% ethyl alcohol which creates the presumption that the deceased was under the influence of intoxicating liquor.

Defendant was charged with open murder. After preliminary examination, she was bound over on second-degree murder after the district court judge made findings that the facts sustain neither elements of premeditation nor deliberation necessary for a first-degree murder charge. Defendant's defense was that of self-defense.

At the trial, defendant's sister-in-law, Mary Ann DeRushia, was permitted to testify regarding a conversation she had with defendant approximately nine months before the fatal shooting.

The substance of the testimony was as follows. Defendant allegedly told Mary Ann of disagreements between herself and Robin DeRushia regarding his strict disciplining of her older children. Defendant allegedly said that she once had pointed a gun at him while he was sleeping and "would have killed him". Mary Ann DeRushia did not know how long before the conversation this event actually occurred; she acknowledged that at the time of the conversation, the defendant and Robin DeRushia were divorced. Mary Ann DeRushia agreed that the nature of the conversation was that defendant DeRushia was having a problem with her husband regarding discipline or beating of the older children and that "there were times when she became so upset with that, that there may have been one time when she even thought she could kill him because that is how he treated her children". Mary Ann DeRushia said that she mentioned the conversation to Robin DeRushia and "he took it very lightly". Defendant DeRushia testified that she recalled no such conversation.

On appeal, defendant first claims that this testi-

mony was improperly admitted. She contends that it is inadmissible hearsay, totally irrelevant and fatally prejudicial. Conversely, the people contend that the testimony is relevant and necessary to show state of mind, intent, deliberation or lack of provocation or justification. Under the facts and circumstances of this case, we agree with defendant and, accordingly, reverse and remand.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. MRE 801. In the instant case, the prosecutor was attempting to establish that defendant intended to kill her husband because she had stated at least nine months prior to the shooting that she had at some earlier unspecified time pointed a gun at his head and "would have killed him" because of his abuse of the children. He apparently hoped that the jury would infer that since she had intended to kill him previously, she must have intended to kill him on the night of May 27, 1979. Using the statement in this manner requires the belief that intent is intent, with no consideration given as to the temporariness of that intent or as to what circumstances may have provoked that intent. This is using the testimony for the purpose of asserting the truth of the matter, and, thus, is hearsay.

Since the testimony is hearsay, it can only be admitted pursuant to a recognized exception or exclusion. MRE 802. MRE 803(3) provides an exception for a statement of declarant's "then existing" state of mind, or emotion which includes intent, plan or motive. However, this exception is not applicable since it is expressly limited to declarant's "then existing" mental, emotional or physical condition and expressly precludes a statement of memory or belief. Mary Ann DeRushia's

testimony is not a statement of defendant's then-existing state of mind. The statement does not indicate how defendant felt at the time she related the incident to Mary Ann DeRushia, nor does it indicate the state of her mind at the time she actually shot her husband. She was recalling and relating an incident which had occurred at some time in the unknown past. Thus, the testimony does not meet the exception provided by MRE 803(3).

Both parties relied heavily on *People v Melvin,* 70 Mich App 138, 144-146; 245 NW2d 178 (1976), *lv den* 399 Mich 817 (1977), as supporting their respective positions. There the defendant had written a letter to the victim two and a half years before he killed her stating that he was willing to kill in order to prevent her from ever leaving him. The Court stated that "the letter was still hearsay since it was a written out of court statement offered to establish the truth of the defendant's statement that he had decided to kill his wife if the fights over her repeated departures continued". *Id.,* 145. The Court, however, determined that the letter was admissible as an exception to prove the declarant's state of mind. There is, in that case, no doubt that the letter reflected the state of mind of the defendant at the time he wrote the letter—it showed his intention to kill. This was not the situation in the instant case. The letter in *Melvin* falls under the exception to the hearsay rule, but the statement by defendant here does not.

Alternatively, the challenged testimony may tentatively qualify as a party admission pursuant to MRE 801(d)(2)(a). A statement is not hearsay if the statement is offered against a party and is his own statement.

Once a statement is deemed an admission, however, the issues of relevancy and remoteness are raised. *Melvin* again applies. Recognizing that the letter in *Melvin* was written two and a half years prior to that defendant's killing his wife, the Court discussed both the legal and the logical relevancy of it. The Court stated:

"Given the prosecution theory that the defendant killed his wife because she was about to leave him again, the logical relevance of the letter is clear. The argument that the letter was too old to be admitted is an attack on its legal relevancy, *i.e.,* whether its improper prejudicial effect outweighs its proper probative value. Evaluation of those factors is entrusted to the discretion of the trial judge." *Melvin, supra,* 144.

In *Melvin,* the Court clearly ties the relevancy of the letter to the circumstances which precipitated the defendant's murder of his wife. This is a very important difference from the instant situation. The circumstances under which Mrs. DeRushia killed her husband were very different from the circumstances which gave rise to her purportedly aiming a gun at her husband's head as per the testimony of Mary Ann DeRushia. The night defendant shot her husband he was attacking, he had beaten her and threatened to kill her. The night she recalled that she "would have killed him", her statement was based on the fact that he had been beating and otherwise mistreating her children. Thus, applying *Melvin,* the instant testimony was neither legally nor logically relevant.

The people invite our attention to a line of cases which are cited for the proposition that "evidence of motive, of course, while not essential, is always relevant for murder". *People v Mihalko,* 306 Mich 356; 10 NW2d 914 (1943). We note that relevancy

is always a matter of degree, analysis and reasoning. *Mihalko,* and the case upon which it relies, and *Melvin* were all cases which involved a charge of first-degree murder where both premeditation and deliberation were required. Moreover, relevancy means that the evidence is sufficiently probative of a fact in issue to offset the prejudice its admission produces. *People v Thompson,* 76 Mich App 705; 257 NW2d 268 (1977). Bare relevancy is not the sole criterion for admissibility.

Finally, we note that the Court in *Melvin* states that they preferred to treat the letter as a state of mind exception to the hearsay rule rather than an admission because of the remoteness issue. It is very difficult to say that an admission made so much earlier in time is relevant to a crime which occurred long afterward.

As stated previously, the testimony given by Mary Ann DeRushia was virtually irrelevant. It did not tend to prove any fact in issue. It did not show that defendant intended to kill her husband on May 27, 1979, that she deliberated or that she lacked provocation or justification. The purported intention stated by Mary Ann DeRushia was provoked by entirely different circumstances. Moreover, the circumstances which gave rise to the testified-to incident, *i.e.,* the mistreatment of defendant's children, were more than dissipated by the subsequent remarriage of defendant and decedent. To admit the testimony in order to prove defendant's intent would have the practical effect of imputing intent to a defendant whenever it can be shown that at some time, under some circumstance, the defendant stated he intended to kill his victim. This is not a desired result.

For all of the above stated reasons, we are persuaded that the testimony was more prejudicial

than it was probative, MRE 403. *People v Wilkins,* 408 Mich 69; 288 NW2d 583 (1980). Its prejudicial effect was aggravated by the prosecutor's arguing to the jury the importance of the testimony in negating the claim of self-defense. The admission of the testimony was not harmless beyond a reasonable doubt. *People v Hall,* 77 Mich App 456; 258 NW2d 517 (1977), *lv den* 406 Mich 918 (1979), *People v Wilkins, supra.* It is reasonably possible that in a trial free of the above error, at least one juror may have voted to acquit defendant. This is especially true in light of the nature of the self-defense excuse and the proofs being in equipoise.

The conviction of defendant must be reversed based on the improper inclusion of the testimony of Mary Ann DeRushia. It is unnecessary for this Court to discuss the remaining three issues since they are not now dispositive.

Reversed and remanded.