PEOPLE v HACKNEY

Docket No. 108257. Submitted July 12, 1989, at Grand Rapids. Decided May 7, 1990.

Stacey D. Hackney, at the conclusion of a jury trial in Berrien Circuit Court, Casper O. Grathwohl, J., was convicted of first-degree criminal sexual conduct involving a seven-year-old boy. Evidence at trial included testimony by the victim, the mother of the victim's playmates, the victim's mother, the emergency room nurse who examined the victim following the sexual assault, and a police officer. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in admitting, on the basis of the excited utterance exception to the hearsay rule, testimony by which the mother of the victim's playmates related the victim's statement that defendant had penetrated the victim's anus with defendant's penis. The victim's statement to his playmates' mother, made some three or four hours after the sexual assault, (1) arose out of a startling occasion, (2) was made before there had been time to contrive and misrepresent, and (3) related to the circumstances of the startling occasion.

2. The trial court abused its discretion in admitting testimony by which the victim's mother related statements made by the victim regarding the sexual assault. These statements, having been made some seven hours after the incident and in response to questioning by the mother after she was notified of the victim's earlier statement to the playmates' mother, were not properly admissible under the excited utterance exception. The circumstances surrounding the victim's statements to his mother had few indications of spontaneity to support a conclusion that the statements were made under the influence of an

REFERENCES

Am Jur 2d, Evidence §§ 372, 373, 683, 686, 708, 719, 728; Infants § 17.5.

Admissibility of physician's testimony as to patient's statements or declarations, other than res gestae, during medical examination. 37 ALR3d 778.

overwhelming emotional condition precipitated by and continuing since the time of the sexual assault.

3. The trial court, on the basis of the medical treatment exception to the hearsay rule, properly admitted those portions of the nurse's testimony by which she related statements made to her by the victim regarding the precise nature of the sexual acts performed by defendant. The victim's motive in making these statements was consistent with that of a patient seeking medical diagnosis or treatment, and it was reasonable for the nurse to have relied on the information conveyed by the victim in diagnosis and treatment. However, the trial court abused its discretion in admitting those portions of the nurse's testimony by which she related the victim's identification of defendant as the perpetrator, since establishment of the perpetrator's identity was not reasonably necessary for medical care or treatment.

4. In light of the credible testimony by the victim and physical evidence overwhelmingly indicating defendant's guilt, the trial court's admission of hearsay testimony by the victim's mother and those portions of the nurse's testimony which identified defendant was harmless error.

5. The trial court did not abuse its discretion, under the circumstances of the case, in refusing to declare a mistrial on the basis of unresponsive testimony by the police officer indicating that the officer thought it unusual for defendant not to have offered an alibi. There was no indication that the prosecutor knew in advance that the officer would give unresponsive testimony or that the prosecutor conspired with or encouraged the officer to give such testimony. Defendant was not deprived of a fair trial by virtue of the officer's testimony in view of the trial court's cautionary instruction to the jury to disregard the unresponsive testimony and the fact that defendant never asserted an alibi defense.

Affirmed.

WAHLS, J., dissented and would hold that the trial court abused its discretion in admitting the hearsay testimony of the mother of the victim's playmates, since the evidence did not support a finding that the victim was still under the sway of excitement from the startling incident such that he was bereft of reflective capacity when he made the statement to the playmates' mother. Judge Wahls would reverse and remand for a new trial.

1. EVIDENCE — APPEAL.

The decision to admit or not to admit evidence is committed to

the sound discretion of the trial court and will not be over-
turned on appeal in the absence of an abuse of discretion.

2. EVIDENCE — HEARSAY — EXCITED UTTERANCE EXCEPTION.

  To come within the excited utterance exception to the hearsay
  rule, a statement must meet three criteria: (1) it must arise out
  of a startling occasion; (2) it must be made before there has
  been time to contrive and misrepresent; and (3) it must relate
  to the circumstances of the startling occasion (MRE 803[2]).

3. EVIDENCE — HEARSAY — MEDICAL TREATMENT EXCEPTION.

  A two-part test is applied to determine whether statements were
  reasonably necessary for diagnosis and treatment for purposes
  of applying the medical treatment exception to the hearsay
  rule: (1) the declarant's motive must be consistent with that of
  a patient seeking medical diagnosis or treatment, and (2) it
  must be reasonable for the doctor to rely on the information in
  diagnosis and treatment (MRE 803[4]).

4. EVIDENCE — HEARSAY — MEDICAL TREATMENT EXCEPTION — SEX-
    UAL ASSAULT — IDENTITY OF PERPETRATOR.

  Hearsay evidence of the identity of the perpetrator of a sexual
  assault is not admissible pursuant to the medical treatment
  exception to the hearsay rule where identification of the perpe-
  trator is not reasonably necessary for medical care or treat-
  ment (MRE 803[4]).

5. CRIMINAL LAW — WITNESSES — UNRESPONSIVE TESTIMONY — MIS-
    TRIAL.

  As a general rule, unresponsive testimony by a prosecution
  witness does not justify a mistrial unless the prosecutor knew
  in advance that the witness would give unresponsive testimony
  or the prosecutor conspired with or encouraged the witness to
  give such testimony.

*Frank J. Kelley,* Attorney General, *Paul Malo-
ney,* Prosecuting Attorney, and *David P. LaForge,*
Assistant Prosecuting Attorney, for the people.

*Stuart D. Hubbell,* for defendant on appeal.

Before: MICHAEL J. KELLY, P.J., and WAHLS and
HOLBROOK, JR., JJ.

HOLBROOK, JR., J. Defendant was convicted by a

jury of first-degree criminal sexual conduct, MCL
750.520b(1)(a); MSA 28.788(2)(1)(a). Defendant ap-
peals, arguing that the trial court erroneously
ruled that several statements made by the victim
after the sexual assault were admissible into evi-
dence. We affirm.

Primarily, evidence of the criminal charge
against defendant was established by the testi-
mony of the victim, who was seven years old at
the time of the alleged sexual assault. According
to the victim, he arrived home from school on the
day of the incident and met defendant, his second
cousin, who was charged with responsibility for
taking the victim to the home of defendant's
mother, Teresa Hackney. It had been arranged
that Hackney would baby-sit the victim while the
victim's mother was working. The victim testified
that defendant pulled the victim by the shirt into
the victim's bedroom and pushed him onto the
bed. A pillow was placed in the window. Defendant
then pulled down both the child's pants and his
own pants. Defendant obtained a jar of Vaseline
from the bathroom and applied some "grease" "up
[the victim's] behind" before he penetrated the
victim by "put[ting] his private in [the victim's]
behind." Defendant instructed the victim not to
tell anybody because defendant did not want to go
to jail. Defendant cleaned both himself and the
victim with paper towels and then took the victim
over to the Hackney residence.

I

As part of the prosecutor's case, the victim
testified that he disclosed the sexual abuse to
several persons within a day of the incident. The
prosecutor, over defendant's hearsay objections,
called those persons as witnesses to testify regard-

ing the victim's statements. We examine each of these statements in the chronological order of their making under the pertinent hearsay exceptions.

A decision whether or not to admit evidence is committed to the sound discretion of the trial court. Accordingly, our review is limited to a determination whether the trial court abused its discretion in making these rulings. See *People v Johnson,* 174 Mich App 108, 112; 435 NW2d 465 (1989); *People v King,* 158 Mich App 672, 678; 405 NW2d 116 (1987).

A

In the aftermath of the assault, the victim testified that, after his arrival at the Hackney home, he went outside to play with children of Marian Feller, a neighbor of the Hackneys. The victim told the other children about the sexual assault, and the children prompted the victim to relate the incident to Feller.

Feller testified that the victim came to her house about 5:00 or 5:30 P.M. to play with her children. After perhaps two hours of play, according to Feller, the following occurred:

> R_____ [the child or victim] and my two kids were out back playing, and they came around to the front, my two. They said, "Mommy, R_____ wants to talk to you. Mommy, R_____ wants to tell you something." I said, "Okay. Tell him to come on." They said, "Come on in R_____. Mamma said, 'Come on in.' "
>
> He came in, walked straight up to a chair similar to this. He walked right up to the side, he blurted out, "Stacey took" . . .
>
> * * *

R_____ said, "Stacey put his private in my behind." And I asked the child, "Could you say that for me again," because I didn't think I understood him or heard it right. He repeated it. I asked him did he tell his mother. He said, "No." I said, "Well, how? When?" He said when he came home from school he made him go to his bedroom and he pulled his pants down. And he told him no, but he went to the bathroom and got grease and did it anyhow.

\* \* \*

When he said, "Stacey put his private in my behind," he said it fast and a little louder than what he normally talks, normally speaks, because he's soft spoken. But he said that, just blurted it out, "Stacey put his private in my behind," real quick like that.

\* \* \*

He told me—he also said he just wanted it to stop. He didn't want that to happen again. I told him, "Okay. I will get in touch with your mom, let her know," because he said he hadn't told her.

The hearsay exception at issue, the excited utterance exception, pertains to a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). In deciding whether the victim's statement to Feller fits the exception, we have the benefit of guidance from the recent decision in *People v Straight,* 430 Mich 418; 424 NW2d 257 (1988). In *Straight,* the issue arose in the context of statements made by a four-year-old child identifying the defendant as the perpetrator of an incident of sexual assault one month previously. In reversing a conviction on the ground that the statements of the child victim were erroneously admitted, the Court reaffirmed adherence to the three-part test set forth in *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979):

To come within the excited utterance exception to the hearsay rule, a statement must meet three criteria: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion. [*Straight, supra,* p 424 (quoting *Gee, supra*).]

See also *People v Burton,* 433 Mich 268; 445 NW2d 133 (1989).

As is common in questions of admissibility of statements by sexual abuse victims, it is the second part of the *Straight-Gee* test that creates doubt as to its proper application. The Court in *Straight* explained this part as "a reformulation of the inquiry as to whether the statement was made when the witness was still under the influence of an overwhelming emotional condition." 430 Mich 425. Properly understood, it relates to a "lack of capacity to fabricate rather than the lack of time to fabricate." *Id.* Thus, the question is not whether it is likely that the child's statements were falsely made—in point of fact, the detail and recollection of the victim's testimony in this case is convincingly consistent with third-party testimony of his out-of-court statements, thus suggesting a large measure of reliability—but rather whether the circumstances surrounding the making of the statement suggest reliability and lack of opportunity for the deliberation and preparation attendant to giving a false statement.

In making this determination, the Court in *Straight* noted the following considerations equally pertinent to this case:

Evidence that the statement was self-serving or made in response to an inquiry, while not justification for automatic exclusion, is an indication that the statement was the result of reflective thought,

and where the time interval permitted such thought these factors might swing the balance in favor of exclusion. Proof that between the event and the statement the declarant performed tasks requiring relatively careful thought, of course, is strong evidence that the effect of the exciting event had subsided. Because of the wide variety of factual situations, appellate courts have recognized wide discretion in trial courts to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event. [430 Mich 426, n 6, quoting McCormick, Evidence (3d ed), § 293, p 857.]

Whether or not there was "time to contrive and misrepresent" in the instant case presents a close question. According to defendant's testimony, the victim arrived home from school about 3:45 or 3:50 P.M.[1] The statement to Feller occurred some time in the early evening, perhaps three to four hours after the incident itself. This relatively short duration supports an inference that the child's statement was made out of a continuing state of emotional shock or impairment precipitated by the assault itself. Because the startling event was so traumatic in nature, it is understandable that the effect on the child's emotional state could have persisted up to the time of the statement. On the other hand, the child's own testimony establishes that he engaged in normal childhood play with others for some time before finally disclosing the incident. Disclosure of the incident was made in response to a limited degree of encouragement by Feller and her children to tell what was bothering

[1] There does not appear to be any other indication in the record of the child's time of arrival in defendant's presence or of the time of the sexual assault. Given that this fact would appear to be readily verifiable if it was believed that defendant was being untruthful, we see no reason to reject defendant's testimony in this regard. We also note that the child's mother testified that it was usual for the child to arrive home from school between 3:45 and 4:00 P.M.

him. "Although the fact that a statement has been made in response to questions does not in and of itself preclude the statement from being an excited utterance, it is a factor militating against admitting it." *People v Petrella,* 124 Mich App 745, 759-760; 336 NW2d 761 (1983), aff'd 424 Mich 221; 380 NW2d 11 (1985).

The determination whether the statement to Feller was a spontaneous response emanating directly from a startling event is subject to conflicting inferences drawn from the circumstances surrounding the making of the statement. We note that the trial judge is appropriately accorded "wide discretion" in deciding these matters. *Straight, supra,* p 426, n 6. In an appropriate case, the concept of discretion implies that a judicial ruling choosing between two viable alternatives, i.e., to admit or exclude proposed evidence, cannot be deemed error by the reviewing court. See *People v Golochowicz,* 413 Mich 298, 322; 319 NW2d 518 (1982) ("The decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion."). This is one of those cases. We conclude that the ruling admitting the statement to Feller was properly within the bounds of the court's discretion.

B

After the victim disclosed the sexual assault to Feller, Feller contacted the victim's mother at her workplace and told her to come home early because an emergency situation had arisen. The mother went to Feller's house, where Feller informed her of the child's disclosure of sexual abuse. The mother then proceeded to the neighboring Hackney home, picked up the child, and proceeded to drive home sometime before 11:00 P.M.

On the way home, the mother raised the issue of the sexual assault to the child. She testified to what occurred next:

> I asked him what was going on, you know, what was up.
>
> * * *
>
> I asked him what was wrong. I asked him what happened. He said that Stacey put his privates in his behind. He said—I asked him when. He told me. I asked him.
>
> * * *
>
> He said it happened today, it happened yesterday.

The mother testified that the child then proceeded to give a detailed account of the incident, which was consistent with the statement to Feller and the child's trial testimony.

According to the victim's testimony, after disclosing the incident to Feller, he continued playing until defendant told him to come back to the Hackney home. The child played cards and watched a movie until his mother arrived to pick him up.

When viewed against the criteria of an excited utterance set forth in part I-A of this opinion, it is apparent that the circumstances of the victim's statement to his mother present a more compelling case for exclusion as inadmissible hearsay. The statement itself was significantly farther removed in time from the sexual assault. After the child made the shocking disclosure to Feller, Feller told him that she would apprise his mother of the incident, leaving him with time and opportunity to reflect upon his disclosure and to anticipate further inquiries from his mother. The child continued in ordinary, unremarkable activities until

his mother arrived at the Hackney home. His statements to his mother were prompted by the mother's questions based on what she had learned from Feller. Under the totality of the circumstances, there are too few indicia of spontaneity to support a conclusion that the victim's statements were made to his mother "under the influence of an overwhelming emotional condition" precipitated by and continuing since the time of the sexual assault. *Straight, supra,* p 425. We conclude that the ruling admitting his mother's testimony of the child's statements to her was an abuse of discretion.

C

After 2:30 or 2:45 A.M. the next day, the victim's mother took the victim to a hospital emergency room, where he was examined by Judith Sulok, R.N. Sulok interviewed the child, took samples of his saliva and blood, and secured underwear as part of a sexual assault kit. The samples and kit were sent to the police. Sulok testified that she asked the victim what happened to him in order to determine what types of medical testing were appropriate. An attending physician took rectal smears in order to detect the presence of sperm or venereal disease.

Sulok testified that, during her interview with the victim, she was informed:

> R_____ stated that Stacey had put his penis into R_____'s rectum and then Stacey had taken his hands and had touched and fondled Stacey's penis.

Sulok further testified that defendant threatened the victim. Defendant's objection to this particular testimony was sustained.

The child's statement to Sulok was admitted into evidence pursuant to the medical treatment exception to the hearsay rule.[2] MRE 803(4). Whether or not a statement is admissible under this exception is usually determined by application of a two-part test: (1) the declarant's motive for making the statement must be consistent with the purpose of MRE 803(4), i.e., that of a patient seeking medical diagnosis or treatment, and (2) it must be reasonable for the care provider to rely on the information conveyed by the declarant in diagnosis and treatment. *People v Creith,* 151 Mich App 217, 226-227; 390 NW2d 234 (1986); *People v Zysk,* 149 Mich App 452, 457-458; 386 NW2d 213 (1986).

In this case, Sulok testified that the purpose underlying the hospital procedures involved medical treatment. It seems obvious that a sexual assault involving anal penetration of a seven-year-old child would require specific medical attention. Sulok testified that a detailed account by the victim was necessary in order to determine the necessary tests, and the victim was in fact administered a rectal smear in order to detect possible venereal disease. It is also apparent that some of the procedures were designed to gather and preserve evidence to facilitate a criminal investiga-

---

[2] After grounding his ruling on the medical treatment exception, the trial judge added that the statement was "an existing physical condition of R_____ at that time, and therefore, it is an exception to the hearsay rule." This appears to be an alternative ruling of admissibility pursuant to the exception in MRE 803(3) for a then existing physical condition, although the parties have not argued the applicability of this particular exception on appeal. However, MRE 803(3) is not a valid ground of admissibility because a statement explaining a past sequence of events (from the standpoint of the declarant at the time of the statement) is not a then existing physical condition within the meaning of the rule but, rather, a "statement of memory or belief" that is explicitly excluded from the exception. See *Duke v American Olean Tile Co,* 155 Mich App 555, 571; 400 NW2d 677 (1986); *People v DeRushia,* 109 Mich App 419, 424-425; 311 NW2d 374 (1981).

tion. However, both the victim's motive and the health care provider's need for the information are sufficiently related to medical purposes. We conclude that it was proper for Sulok to testify to the child's account of the precise nature of the sexual acts or conduct involving him.

In *People v LaLone,* 432 Mich 103, 110-115; 437 NW2d 611 (1989), it was held that the identity of the perpetrator of a sexual assault is not admissible as part of a statement made for medical purposes pursuant to MRE 803(4). Even if, the prosecutor contends, the holding in *LaLone* is limited to the context of psychological treatment, there is no plausible argument in the instant case that defendant's identity was "reasonably necessary" for medical care or treatment. Cf. *People v Wilkins,* 134 Mich App 39; 349 NW2d 815 (1984), lv den 422 Mich 862 (1985). Accordingly, it was beyond the discretion afforded the trial court to allow Sulok to testify to those statements of the victim that tended to identify defendant.

D

In sum, we have concluded that it was improper for the trial court to have admitted evidence of (1) the victim's out-of-court statement related by his mother's testimony pursuant to the excited utterance exception, MRE 803(2), and (2) nurse Sulok's testimony of the victim's identification of defendant as the perpetrator of a sexual assault pursuant to the medical treatment exception, MRE 803(4). It remains to be decided whether reversal is required in consequence of these errors.

The account of the incident provided by the victim's own testimony was graphic, detailed, and convincing. It leads to a strong inference that such testimony is credible because a seven-year-old

child testifying in a courtroom and subject to cross-examination does not ordinarily have knowledge of such matters from his usual range of experiences, absent some explanation of familiarity with sexual matters or an incentive to prevaricate. See *People v Foreman (On Remand),* 179 Mich App 678; 446 NW2d 534 (1989). Although we acknowledge the inherent limitations in evaluating credibility from the appellate perspective, a reading of the victim's testimony compels the conclusion that his version of the incident would be extremely difficult to disbelieve or to assail as lacking in credibility.

Physical evidence overwhelmingly established that the child had been sexually abused and corroborated defendant's identity as the perpetrator. Sperm was detected on the child's underpants and on paper towels discarded at the location of the sexual assault. Tests conducted on samples of the sperm indicated that the source, in all likelihood, was a secretor with an AB blood type,[3] which is characteristic of only 3.2 percent of the fertile male population. Because the victim had type O blood, it was impossible that he could have been the source of the sperm. Tests done on samples of defendant's blood and saliva indicated that he was a type AB secretor.

It is fair to characterize the totality of the prosecutor's evidence linking defendant to the sexual assault as overwhelming. Because defendant failed to seriously diminish the credibility of the prosecutor's witnesses, it does not seem likely that

[3] According to the prosecutor's expert witness, a crime laboratory scientist, the only other medical possibility was that the sperm was deposited by multiple persons, one of whom was a type A secretor and another who was a type B secretor. The likelihood that the victim was abused by several persons fitting these physical characteristics seems remote, and there was no evidence or plausible theory advanced at trial supporting this theory.

any corroborating effect derived from the victim's statements to his mother or Sulok significantly prejudiced defendant. Moreover, in view of our conclusion that the victim's statement to Feller and most of the statement to Sulok were properly admitted, the evidentiary impact of those statements or portions of statements improperly admitted was cumulative, thereby reducing any prejudice to a minimal degree.[4] See *People v Johnny Johnson,* 113 Mich App 575, 582; 317 NW2d 689 (1982). Because it is not reasonably possible that exclusion of the inadmissible statements could have led a reasonable juror to change his finding of defendant's guilt, the error was harmless. See *People v Furman,* 158 Mich App 302, 318-319; 404 NW2d 246 (1987), lv den 429 Mich 851 (1987). Unlike those cases where reversal was required by the predominance of credibility issues, the instant case lacks a close one-on-one credibility contest to be decided as a function of the competing testimony of the victim versus the defendant. Cf. *Gee, supra,* p 283; *Straight, supra,* pp 427-428; *LaLone, supra,* p 117; *People v Lee,* 177 Mich App 382, 386; 442 NW2d 662 (1989), lv pending.

II

Defendant argues that a mistrial should have

---

[4] Even if we had held that all postassault out-of-court statements made by the victim to Feller, his mother, and Sulok were admitted in violation of the hearsay rule, we would not be inclined to reverse the conviction, notwithstanding that admission of the statements under these circumstances would then be cumulative only to the victim's own trial testimony. Because the uncorroborated testimony of a sexual assault victim is often viewed as inherently suspect, see *People v DerMartzex,* 390 Mich 410, 412-415; 213 NW2d 97 (1973), improper admission of the postassault statements would arguably carry a great deal of prejudice by providing the missing corroborative piece of evidence against defendant. However, the physical evidence of the assault, viewed in conjunction with the victim's testimony, remains an overwhelming indication of defendant's guilt, and we would still find the error to be harmless.

been declared in consequence of the following testimony given during the prosecutor's direct examination of a police witness concerning his interview with defendant:

> *Q.* Can you tell the ladies and gentlemen of the jury what the Defendant, Stacey Hackney, said?
> *A.* He, at this point, stated that R_____ was making the whole thing up and he could give no reason why R_____ would do it, but R_____ was making the whole thing up.
>
> And Stacey's demeanor, he was very cocky towards me at this particular point in time with his actions and his answers.
>
> &ast; &ast; &ast;
>
> *Q.* Did the Defendant, Stacey Hackney, have anything else to say?
> *A.* No, he did not. He did not offer an alibi, which I thought was unusual at the time.

The reference to defendant's failure to offer an alibi was unresponsive to the prosecutor's question. As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony. *People v Barker,* 161 Mich App 296, 305-306, 307; 409 NW2d 813 (1987). The ruling on a motion for a mistrial is committed to the sound discretion of the trial court. *Id.,* p 305. The test is whether the defendant has been deprived of a fair trial. *People v Siler,* 171 Mich App 246, 256; 429 NW2d 865 (1988).

The trial court gave a cautionary instruction that the jury not consider the witness' comment on the absence of an alibi, but then it denied a mistrial. We conclude that the court's response to the mistrial motion was within its discretion. Fur-

thermore, we fail to see how defendant was preju-
diced, given that he never asserted an alibi de-
fense. Defendant's defense from the inception of
the criminal investigation through the conclusion
of the proceedings has been to admit his presence
at the time of the crime but to deny that he
committed the criminal act.

Affirmed.

MICHAEL J. KELLY, P.J., concurred.

WAHLS, J. *(dissenting)*. According to the testi-
mony in this case, complainant was sexually
abused by defendant at approximately 3:45 P.M.
after arriving home from school. Complainant was
then driven by defendant to defendant's mother's
house. From there, complainant walked across the
street and began playing with his friends, the
children of Marian Feller, at approximately 5:00
P.M. The children, including complainant, appar-
ently played in their usual fashion for approxi-
mately the next two hours. Eventually, Feller's
two children approached Feller and informed her
that complainant wanted to tell her something.
Feller summoned complainant to her. Complain-
ant walked up to Feller and declared that defen-
dant "put his private in my behind." Complainant
then returned to his play with Feller's children.
Over defendant's objection at trial, the trial court
admitted Feller's hearsay testimony repeating
complainant's statement to Feller under the ex-
cited utterance exception to the hearsay rule,
MRE 803(2).

The majority believes that the issue whether
Feller's hearsay testimony was properly admitted
presents a close evidentiary question. Since the
decision upon a close evidentiary question "by
definition ordinarily cannot be an abuse of discre-

tion," *People v Golochowicz,* 413 Mich 298, 322; 319 NW2d 518 (1982), the majority concludes that the trial court's ruling was within the bounds of its discretion.

I believe that the issue is not at all close and that the trial court abused its discretion when it admitted Feller's hearsay testimony. Therefore, I dissent from that portion of the majority's decision.

In *People v Kreiner,* 415 Mich 372, 376, 378; 329 NW2d 716 (1982), our Supreme Court held that the "tender years exception," which permitted hearsay testimony of the statements of a sexually abused child for the purpose of *corroborating* the child's trial testimony, did not survive the adoption in 1978 of the Michigan Rules of Evidence. Our Supreme Court recently observed that, following *Kreiner,* there has been "increasing resort to the excited utterance exception to admit a young child's statements." *People v Straight,* 430 Mich 418, 430; 424 NW2d 257 (1988). Apparently, evidence which formerly would have been admitted *only* under the tender years exception is now being admitted under the excited utterance exception. See *Straight, supra,* pp 423, 430-431; cf. *Kreiner, supra,* p 377. Accordingly, evidence which formerly could be used only to corroborate the victim's testimony is now being used as substantive evidence to establish the elements of the offense or circumstances surrounding the offense. See, e.g., *Straight, supra,* pp 426-427; cf. *Kreiner, supra,* p 377.

The Court in *Straight, supra,* pp 430-431, made clear that the excited utterance exception should no longer be stretched to fill the void left by the abolition of the tender years exception. In this case, the majority's affirmance of the trial court's ruling effectively condones the continuation of past

practice in spite of *Straight, supra.* As will be shown, Feller's hearsay testimony clearly does not meet the foundational requirements set forth in *People v Gee,* 406 Mich 279; 278 NW2d 304 (1979), and explained in *Straight, supra,* pp 423-426, for admission of hearsay testimony as an excited utterance under MRE 803(2).

In *Gee, supra,* p 282, our Supreme Court stated the essential foundational requirements for an excited utterance:

> To come within the excited utterance exception to the hearsay rule, a statement must meet three criteria: (1) it must arise out of a startling occasion;[4] (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion.

---

[4] Startling enough to produce nervous excitement and to render the utterance spontaneous and unreflecting.

---

I have no doubt that the evidence in this case supports a finding that the "occasion" was startling enough to produce *an* utterance which was spontaneous and unreflecting. I do not believe, however, that the utterance to Feller was "spontaneous and unreflecting," as explained in *Straight, supra.*

The Court in *Straight, supra,* pp 423-424, n 3, noted that " '[t]he assumption underlying this exception is that a person *under the sway of excitement* precipitated by an external startling event will be *bereft of* the *reflective capacity* essential for fabrication and that, consequently, any utterance he makes will be spontaneous and trustworthy.' "[1] " 'The crucial point is that the

[1] Quoting 4 Weinstein, Evidence, ¶ 803(2)[01], pp 803-85 to 803-86; emphasis added.

court *must* be able to find that the declarant's state at the time he made the declaration ruled out the *possibility* of conscious reflection.'" *Straight, supra,* p 425.[2] If the declarant was not "still under the influence of an overwhelming emotional condition" which was originally "caused by the startling event," *Straight, supra,* pp 425-426, there is a possibility that the statement was the result of conscious reflection, and, therefore, the statement would not be admissible as an excited utterance.

In this case, the evidence does not support a finding that complainant was still under the sway of excitement from the incident such that he was bereft of reflective capacity when he made the statement which Feller repeated at trial. Moreover, there clearly was conscious reflection.

Complainant told others before he told Feller, see *Gee, supra,* p 283, ns 5-6, and repeated the statement to Feller at the urging of Feller and her children,[3] see *Straight, supra,* p 426, n 6. Complainant played normally with the other children before he spoke to Feller. See *id.* Although Feller testified that when complainant made the statement he spoke faster and louder than usual, Feller also testified that complainant did not appear to be upset when he was playing with her children. Finally, complainant himself testified that he was not scared or upset when he spoke to Feller. Considering all of these circumstances, it was an abuse of discretion for the trial court to admit Feller's hearsay testimony.

In closing, I emphasize that I do not question the reliability and trustworthiness of the child's statements to Feller given the circumstances sur-

---

[2] Quoting Weinstein, *supra,* p 803-91; emphasis added.

[3] I assume he was *repeating* the earlier statement. Curiously, the testimony of the children was not offered.

rounding the hearsay statement.[4] In federal courts, and in child protective proceedings in Michigan, hearsay statements not otherwise admissible under a specific exception to the hearsay rule are admissible when equivalent circumstantial guarantees of trustworthiness are shown. FRE 803(24); MCR 5.972(C). However, there is no similar rule applicable in this case which would permit the admission of Feller's hearsay testimony on the basis of its apparent reliability and trustworthiness. Compare FRE 803 with MRE 803; see also *Kreiner,* pp 377-378. The critical point presently is that, while all excited utterances are presumed to be reliable and trustworthy, *Straight, supra,* p 423, not all reliable and trustworthy statements are excited utterances, even where the statement is made by a child in a sex-related case, *Kreiner, supra,* p 379, n 8. I would reverse defendant's conviction and remand for a new trial.

---

[4] The "circumstances" include, but are not limited to, the similar statements made to others and the corroborative physical evidence both on complainant and at the scene. On the other hand, I do not believe judicial notice can be taken, as the trial court effectively did, that it would be "unusual and difficult" for a child of complainant's age "to contrive facts of this nature."