COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRADLEY GRANT ZDRAL,

        Defendant-Appellant.

UNPUBLISHED
December 22, 2016

No.  328570
St. Clair Circuit Court
LC No.  15-000441-FH

Before:  SAAD, P.J., and METER and MURRAY, JJ.

PER CURIAM.

A jury convicted defendant of operating a motor vehicle while intoxicated, causing serious injury, MCL 257.625(5), for which the trial court sentenced him as a fourth-offense habitual offender, MCL 769.12, to 3 to 15 years' imprisonment.  Defendant appeals, and for the reasons provided below, we affirm.

Defendant was convicted of operating a motor vehicle while intoxicated, causing serious injury to his passenger, Shelley Silk, on July 26, 2014.  An expert in accident reconstruction opined that, given the circumstances surrounding the accident, operator error and alcohol use precipitated the accident.  The accident reconstruction investigation revealed that at approximately 6:40 p.m. on July 26, the Pontiac Aztec defendant and Silk were in was traveling in Kenockee Township on Lapeer Rd., slid sideways off the road into a grass ditch, hit a driveway embankment, flipped, and continued rolling until it stopped on a second driveway embankment.  Silk, who was ejected from the vehicle, suffered life-threatening injuries, including a traumatic head injury, rib and spinal fractures, and lacerated internal organs. Defendant initially told emergency personnel at the accident scene and a deputy at the hospital that he was driving at the time of the accident.  Silk testified at trial that defendant was the driver and that she was asleep in the passenger seat.  Photographs on defendant's cell phone, taken mere minutes before the accident, showed Silk asleep in the passenger seat.  The defense theory at trial was that he was not driving the vehicle when it crashed.  Defendant testified that approximately one mile before the accident scene, he and Silk had stopped and switched places, resulting in Silk driving at the time of the accident.

On appeal, defendant argues that he is entitled to a new trial because the trial court allowed prosecution witness Colleen Bugg to testify that defendant's mother tried to influence witness testimony and to mention that defendant had previously been to prison.  Defendant also

-1-

contends that the prosecutor engaged in misconduct by eliciting the inadmissible evidence that he had been to prison.

Contrary to defendant's assertion, his claims are not preserved. Defendant interjected an unspecified objection immediately after Bugg mentioned that defendant had been to prison. Although the basis for his objection to the prison reference is apparent, defendant did not ask the court to rule on his objection, to strike the testimony from the record, or to issue a curative instruction. Defendant also failed to timely object to Bugg's testimony that defendant's mother had asked her to tell Silk's mother to say that Silk was driving. Therefore, defendant's evidentiary claims are unpreserved. We review defendant's unpreserved evidentiary claims for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant also did not argue at the trial court that the prosecutor engaged in misconduct by eliciting the testimony that he had been to prison, so his prosecutorial misconduct claim also is unpreserved. For this unpreserved argument, we again review for plain error affecting substantial rights and therefore "will not reverse a defendant's conviction[] if a curative instruction could have cured any prejudice." *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

## I. COLLEEN BUGG'S REBUTTAL TESTIMONY

During trial, defendant's mother, Marlene Zdral, was called by the defense. She testified that she observed Silk driving on occasions, that defendant rides in the passenger seat with the seat completely reclined, and that, after the accident, she took a photograph showing the position of the reclined passenger seat. During cross-examination, Marlene testified that she had not talked to Silk since the accident because Silk's mother, Nancy, would not allow anyone to speak to her. Marlene said she called Nancy because she was concerned about Silk's condition. The prosecutor then asked Marlene if she had called Bugg and asked her to tell Silk to say that defendant was not driving, but Marlene denied having done so. After the defense rested, the prosecutor called Bugg as a rebuttal witness. The following exchange occurred:

*Q*. All right. Did you receive any phone calls while you were with Ms. Silk at the hospital, at Hurley there?

*A*. Yes, I did, from [defendant's] mom.

* * *

*Q*. All right. And then did she ask you anything about the crash or talk to you about the crash at all?

*A*. She asked me if I had found Shelley, is she okay.

*Q. Was there anything to do with who was driving involved there [sic] that conversation?*

*A. Well, in three different phone calls she had begged me to, did you get a hold of Nancy, can you please tell them that Shelley was driving, I can't take it my son going to prison again.*

*[Defense counsel]*: Objection your Honor.

*Q.* Well in regards to, to that particular conversation, right, you don't know anything about the situations, right?

*A.* No.

*[The prosecutor]*: Other than what she said. I have nothing further, your Honor. [Emphasis added.]

## II. TRIAL COURT ERROR

"Admission of rebuttal evidence is within the sound discretion of the trial judge and will not be disturbed absent a clear abuse of discretion." *People v Figures*, 451 Mich 390, 398; 547 NW2d 673 (1996). "Rebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *Id.* at 399 (quotation marks and citation omitted). As stated by our Supreme Court:

[T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant. As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief. [*Id.* (citations omitted).]

Although Bugg's testimony that Marlene asked her to tell Nancy that Silk was driving directly contradicted Marlene's testimony, the rebuttal testimony was improper because it did not contradict evidence developed or presented by the defense. Rather, Bugg's testimony was responsive to evidence *introduced by the prosecution* during its cross-examination of Marlene. Cf. *id.* at 400 (stating that rebuttal evidence was properly admitted because the evidence "responded to evidence and impressions raised by defendant *during direct examination*") (emphasis added). Thus, assuming that the admission of the rebuttal evidence was plain error, in order to be entitled to any relief, defendant must also establish that his substantial rights were affected (i.e., that the error was outcome determinative). *Carines*, 460 Mich at 763-764. Defendant bears the burden of showing actual prejudice, *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006), and reversal is only warranted if the error resulted in the conviction of an actually innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of the defendant's innocence. *Carines*, 460 Mich at 763-764.

There is no reasonable likelihood that but for Bugg's rebuttal testimony, the jury would have found defendant not guilty. As defendant states in his brief, "the only issue in contention in the case was who was driving." The substance of the rebuttal testimony was that defendant's mother asked Bugg to tell Silk's mother that Silk was driving. This evidence was of comparatively minor importance considering the totality of the admissible evidence against defendant. Importantly, the first deputy and first paramedic to arrive on the scene both testified

that Silk was found by the passenger side of the vehicle and defendant was found on the opposite side—the driver's side—of the vehicle. Further, defendant initially told an emergency medical technician at the accident scene that he was the one who was driving. He also told the deputy who questioned him at the hospital that he was the driver. In addition, an expert in trauma surgical critical care medicine explained that Silk's severe injuries were on her right side, which was not consistent with impact caused by a steering wheel. Finally, Silk testified that she was not driving, but was asleep in the passenger seat. Photographs on defendant's cell phone, taken just minutes before the accident, corroborated Silk's testimony, as they showed her asleep in the reclined passenger seat. Given the strength of the untainted evidence, it is dubious that Bugg's rebuttal testimony affected the outcome of the case. Accordingly, defendant is not entitled to any relief, as he has not established that any error affected his substantial rights.

Regarding the portion of Bugg's testimony where she referenced defendant having previously been to prison, the prosecutor concedes, and we agree, that the prison reference was not admissible. See MRE 404(b). Again, assuming that the error was plain, defendant has not established the necessary grounds for reversal. The reference was brief and isolated and did not suggest any details about defendant's criminal history; and the subject of his criminal record was not pursued any further. Moreover, given the evidence of defendant's guilt, as discussed previously, this isolated reference was of little consequence and did not affect the outcome of the proceedings. Accordingly, the error did not affect defendant's substantial rights, and he is not entitled to a new trial.

### III. THE PROSECUTOR'S CONDUCT

Defendant additionally argues that the prosecutor engaged in misconduct for intentionally eliciting the testimony that he had been to prison. However, a prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Contrary to defendant's argument, the prosecutor's question did not invite the testimony that defendant had been to prison. Rather, the prosecutor asked Bugg if Marlene had said anything to her relating to who was driving the car. Clearly, the prosecutor merely desired to elicit Bugg's testimony that Marlene wanted to influence Silk's family to say that Silk was driving at the time of the accident. Bugg volunteered the additional information of why Marlene made the plea. The prosecutor did not seek to develop that testimony and did not mention the objectionable testimony in her closing argument. Because the remark was volunteered by Bugg, and nothing in the record suggests that the prosecutor knew or encouraged her nonresponsive answer, defendant has not established prosecutorial misconduct. See *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Moreover, a curative instruction would have cured any prejudice that resulted from the reference to defendant being in prison before. Thus, under our plain-error review, defendant has not established the necessary grounds for reversal. See *Ackerman*, 257 Mich App at 449.

Affirmed.

/s/ Henry William Saad
/s/ Patrick M. Meter
/s/ Christopher M. Murray