# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAVONTE JEROME HIGGINS,

        Defendant-Appellant.

UNPUBLISHED
October 29, 2015

No. 322457
Kent Circuit Court
LC No. 13-010155-FC

---

Before: TALBOT, C.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Defendant, Javonte Higgins, was convicted by a jury of two counts of first-degree felony murder, MCL 750.316(1)(b); one count of first-degree home invasion, MCL 750.110a(2); and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to 2 years' imprisonment for the felony-firearm conviction, concurrent terms of life imprisonment without the possibility of parole for the felony-murder convictions, and a consecutive term of 13 to 20 years' imprisonment for the home invasion conviction. Defendant now appeals as of right. We affirm.

## I. BASIC FACTS

Defendant's convictions arise out of the shooting deaths of David and Vivian Bouwman. The Bowmans were killed during an invasion of their home, located on Stowe Valley Drive SE in Kentwood, Michigan. Their bodies were discovered in the early afternoon of January 5, 2013, after their vehicle, a 2001 Cadillac DeVille, was found on fire at an apartment complex in nearby Wyoming. Eyewitnesses later tied defendant to the vehicle fire, and two of his friends testified at trial that he came to them on the morning of January 5, 2013, seeking their assistance in disposing of a vehicle matching the description of the Bouwmans' Cadillac. One of those witnesses specifically recalled defendant acting "paranoid" and telling him that "some people got shot." Another of defendant's friends testified that she dropped him off near the Bouwman residence—which was also near his own home—on the night of the murders, a mere hour before one of the Bouwmans' neighbors heard a rapid succession of "popping noises" outside his window.

Defendant was ultimately arrested in Chicago, Illinois, after leaving Michigan with one of his acquaintances. Defendant initially denied any involvement in the murders when the acquaintance confronted him with the fact that various media outlets had reported on his alleged

-1-

involvement in the killings. A short while later, however, when the acquaintance asked defendant about media reports of an accomplice, defendant stated, "I don't know that guy [the accomplice], I was by myself . . . ." Defendant told the acquaintance that if the police "roll[ed] on [them]," he was "not gonna go alive." Defendant was arrested a short time later. Defendant initially reached for a gun as the officers surrounded the acquaintance's car, but the acquaintance grabbed defendant and prevented him from reaching the weapon.

## II. OTHER-ACTS EVIDENCE

Defendant first argues that he was deprived of his due process right to a fair trial when the trial court allowed, over his objection, the admission of prior acts of misconduct under MRE 404(b). We disagree. We review the trial court's decision whether to admit evidence for an abuse of discretion, but review preliminary questions of law, such as whether a rule of evidence precludes admissibility, de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

The other-acts evidence consisted of testimony from various witnesses regarding previous home invasions and the theft of a truck occurring between 2007 and 2012 in Kent County. Specifically, the testimony pertained to (1) a home invasion on Old Lantern Drive in Kentwood on December 9, 2007; (2) a home invasion on Ticonderoga Drive in Kentwood on September 7, 2012; (3) a home invasion on 52nd Street in Wyoming on approximately December 9 or 10 of 2012, and (4) an incident involving a stolen truck near 52nd Street in Wyoming on December 10, 2012. Defendant was implicated and/or apprehended in each instance.

"Generally, Michigan's Rules of Evidence proscribe the use of character evidence to prove action in conformity therewith." *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). Specifically, MRE 404(b)(1) prohibits the introduction of evidence of an individual's "other crimes, wrongs, or acts" for such a purpose. However, evidence of other crimes, wrongs, or acts is admissible under MRE 404(b) if such evidence: (1) is offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime; (2) is relevant to an issue or fact of consequence at trial; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994).

Defendant does not contend that the prosecution failed to articulate proper purposes for the admission of the challenged evidence under MRE 404(b) or that the evidence was irrelevant to those purposes. From our review of the record, however, it is clear that the prosecution did in fact articulate several permissible purposes for the evidence under MRE 404(b), including to prove defendant's identity and to establish a common scheme or plan. Moreover, the evidence was clearly relevant to those non-character purposes. As the record makes clear, each of the four previous incidents were committed within a small geographical area that was in close proximity to both the defendant's mother's house—where defendant had lived since 2007—and the Bouwman residence. In all but one of those prior incidents, defendant stole—or attempted to steal—small items, such as jewelry, in lieu of taking larger or otherwise high-priced items such as electronics. In one incident, he stole a truck before eventually crashing it and suffering

serious injuries, as a result of which it was apparent that he had a limp. Officers apprehended defendant after he crashed the truck and found three rings that matched the descriptions of rings taken in an earlier home invasion. Likewise, in this case, the perpetrator targeted the Bouwman residence, which was in close proximity both to defendant's mother's home and the other homes. The perpetrator stole small items from the Bouwmans, such as Vivian's wedding ring and a small sum of money. Thereafter, the perpetrator stole the Bouwmans' vehicle. Eventually, the stolen vehicle was burned, and the person seen procuring gasoline shortly beforehand, and ultimately running away from the vehicle as it was engulfed in flames, had a noticeable limp that was similar to defendant's limp. Thus, all of these prior acts were relevant to showing defendant's identity as the perpetrator of the charged crimes, either because they helped explain defendant's peculiar physical traits or because they were consistent with the modus operandi employed in the instant case. See *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982). Likewise, the prior acts were relevant to showing defendant's common scheme or plan in committing home invasions—i.e., targeting homes in the same general vicinity, which was close to his own home, and stealing either small items such as jewelry or vehicles.

Defendant argues, however, that even if the evidence was otherwise admissible under MRE 404(b), it should have been excluded under MRE 403 because of its prejudicial nature. He argues that the sheer number of prior acts introduced operated to prejudice him. Again, we disagree. MRE 403 provides, in pertinent part, that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "Evidence is unfairly prejudicial where there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). See also *McGhee*, 268 Mich App at 614 ("[U]nfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock") (citations and quotation marks omitted). "A determination of the prejudicial effect of evidence is best left to a contemporaneous assessment . . . by the trial court. Accordingly, a defendant must meet a high burden to show that a trial court abused its discretion by declining to exclude relevant evidence under MRE 403." *People v Albers*, 258 Mich App 578, 588-589; 672 NW2d 336 (2003) (citation and quotation marks omitted omitted).

There is no doubt that the challenged evidence in this case was prejudicial, but only inasmuch as all relevant evidence will be prejudicial in some fashion or another. See *McGhee*, 268 Mich App at 613-614. The probative value of the evidence was not *substantially* outweighed by its prejudicial nature. As discussed above, the evidence was not merely "marginally probative," *Crawford*, 458 Mich at 398, but rather was highly probative to establishing defendant's identity as the perpetrator of the charged crimes and establishing his common scheme or plan in committing home invasions in the small geographical area surrounding the Bouwman residence. There was no risk that the evidence would be given "undue or preemptive weight by the jury," *id.*, and it did not inject "considerations extraneous to the merits of the lawsuit," *McGhee*, 268 Mich App at 614 (citations and quotation omitted). In any event, "*even if* one could conclude that the unfair prejudice issue creates a close question concerning whether the evidence should have been admitted under the MRE 403 balancing test, . . . the trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of

discretion." *People v Mardlin*, 487 Mich 609, 627 n 55; 790 NW2d 607 (2010) (citation and quotation marks omitted). Finally, we note that any prejudicial effect of the evidence was alleviated by the trial court's limiting instruction under MRE 105.

Additionally, there is no merit to defendant's argument that the sheer number of prior acts prejudiced him. In support of his argument, defendant cites an unpublished case from the Supreme Court of Hawaii, in which the court granted the defendant a new trial after concluding that evidence of her previous 24 convictions for violating a personal protection order (PPO), while relevant, was unfairly prejudicial because the "extraordinary number" of acts introduced led to "overmastering hostility" toward her by the jury. *State v Frazier*, unpublished memorandum opinion of the Supreme Court of Hawaii, issued August 29, 2007 (Docket No. 27327). As a threshold matter, however, this Court is not bound by the decisions of courts of other states. *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011). In any event, the instant case is distinguishable. In *Frazier*, unpub op at 2, a case in which the defendant was charged with violating a PPO obtained by her ex-husband, the prosecution introduced evidence of the defendant's 24 prior convictions for violating a previous PPO obtained by her ex-husband. The terms of the previous PPO were not the same as the PPO at issue in that case, and the conduct prohibited under each PPO was not the same. *Id.* The Supreme Court of Hawaii commented that the probative value of the 24 convictions was "diminished" by the fact that they involved violations of a different PPO, and because the defendant claimed, as a defense to the instant charges, that her conduct was not prohibited by the new PPO at issue. *Id.* at 5. Also, the Court commented that the probative value of the other-acts evidence was diminished in light of the fact that the prosecution did not elicit details concerning whether the charged conduct was similar to the defendant's prior actions. *Id.* The court ruled that the probative value of the evidence—which was minimal to begin with—was substantially outweighed by the danger of unfair prejudice because the "extraordinary number of prior convictions" "undoubtedly rouse[d] the jury to overmastering hostility" against the defendant. *Id.* (quotation marks omitted). Given the marginal probative value of the evidence, the court opined that the prosecution used "the sheer number of [the defendant's] prior convictions as a blunt instrument against her." *Id.*

The instant case stands in stark contrast to *Frazier*. As an initial matter, the relevance of the other-acts evidence in this case draws no parallels to the flimsy relevance of the 24 convictions at issue in *Frazier*. The evidence in the instant case was highly probative of defendant's identity and common plan or scheme of committing home invasions in a specific geographic area. Moreover, the number of instances of misconduct in this case—which is far smaller than the staggering amount of PPO violations in *Frazier*—was not emphasized as was the number of convictions in *Frazier*. Rather, it was used, appropriately, for its strong tendency to connect defendant to the instant offenses. In other words, the other-acts evidence was not used as a "blunt instrument" against defendant. Simply put, we do not agree that the introduction of four previous acts of misconduct was such a staggering amount that it prejudiced defendant regardless of its relevance.

## III. MOTION FOR MISTRIAL

Defendant also argues that the trial court violated his due process rights when it denied his request for a mistrial after a prosecution witness referenced the fact that defendant had

previously been in prison. We disagree. We review a trial court's ruling on a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). A trial court should exercise its power to grant a mistrial with great caution and only do so when there is "an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id.* (citation and quotation marks omitted). Stated differently, a mistrial is only appropriate where the error is so egregious that its prejudicial effect can be removed in no other way. *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

Generally, "unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness could give unresponsive testimony or the prosecution conspired with or encouraged a witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). See also *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). Here, it is clear from the record that the witness's prison reference was an unresponsive answer to an otherwise proper question regarding how long the witness had known defendant. That is, when asked how long she had known defendant, the witness responded that she met him "when he got out of prison, like, a couple summers ago." Immediately following the witness's answer, defense counsel approached the bench, and the trial court admonished the jury to disregard the reference to prison, stating that it had "absolutely nothing to do with this matter" and that it could not be considered in this case. The trial court then advised the prosecutor to speak to the witness in the hallway, and to "advise her of what's going on here[.]" Later, outside the presence of the jury, the prosecutor attested that he had no prior notice that the witness would make that remark; to the contrary, in the several instances in which he met with her to prepare her testimony, she never once mentioned having met defendant after he got out of prison. As such, this unresponsive statement, unintentionally elicited by the prosecution, was not grounds for a mistrial. *Hackney*, 183 Mich App at 531; *Haywood*, 209 Mich App at 228.

Additionally, the comment was not so prejudicial that it impaired defendant's ability to get a fair trial. See *Schaw*, 288 Mich App at 236. The comment was brief and vague (i.e., the witness did not clarify when, why, or for how long defendant was in prison). Further, any harm caused by the statement was lessened by the fact that the other-acts testimony—which detailed how defendant had been apprehended in various home invasions—had already been admitted and had likely informed the jury that defendant had some previous interactions with the criminal justice system. Moreover, the trial court immediately addressed the remark by instructing the jury to disregard it and not let it play a role in its deliberations. Jurors are presumed to follow the trial court's instructions and such instructions are presumed to cure most errors. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Finally, the evidence against defendant was very strong in this case. Defendant was not deprived of a fair trial by the trial court's refusal to grant his motion. See *Schaw*, 288 Mich App at 236.

## IV. QUESTIONS POSED BY JURORS

Defendant finally argues that the trial court violated his due process rights by permitting jurors to ask questions of witnesses during the trial. We disagree. Because defendant did not object when the trial court permitted the jurors to submit questions for witnesses, we review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

MCR 2.513(I), made applicable to criminal cases through MCR 6.001(D), provides that a trial court "may permit jurors to ask questions of witnesses." If the Court does so, "it must employ a procedure that ensures that such questions are addressed to the witnesses by the court itself, that inappropriate questions are not asked, and that the parties have an opportunity outside the hearing of the jury to object to the questions." MCR 2.513(I). This Court Rule comports with longstanding precedent from this Court, as well as our Supreme Court, which sanctions the practice of allowing jurors to ask questions of the witnesses. See *People v Heard*, 388 Mich 182, 187-188; 200 NW2d 73 (1972); *People v Stout*, 116 Mich App 726, 732-733; 323 NW2d 532 (1982). Defendant acknowledges the above authority and concedes that the current state of the law in Michigan sanctions the practice of juror questioning. Moreover, defendant does not argue that the trial court in this case failed to employ an appropriate procedure for the juror questions, as mandated by MCR 2.513(I), or that any particular question was improper. Instead, defendant argues that "as a matter of law reform," the practice of juror questioning "should stop." In support of that position, defendant cites a case from the Minnesota Supreme Court, *State v Costello*, 646 NW2d 204 (Minn, 2002), in which that court banned the practice of juror questioning. However, as noted above, we are not bound by the decisions of courts of other states. *Jackson*, 292 Mich App at 595 n 3. To the contrary, this Court and all lower courts are bound by the case law and rules established by our Supreme Court. *People v Metamora Water Service, Inc*, 276 Mich App 376, 387-388; 741 NW2d 61 (2007); *People v Tierney*, 266 Mich App 687, 713; 703 NW2d 204 (2005). Thus, because *Heard* and MCR 2.513(I) expressly permit trial courts to allow juror questions, defendant cannot establish plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

Affirmed.


/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael F. Gadola

-6-