# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KELVIN JUNIOR NOLEN,

      Defendant-Appellant.

UNPUBLISHED
November 14, 2017

No.  332236
Wayne Circuit Court
LC No.  15-007047-01-FC

Before:  BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions for first-degree premeditated murder, MCL 750.316(1)(a), larceny of a firearm, MCL 750.357b, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.   The trial court sentenced defendant to life imprisonment for the murder conviction and concurrent prison terms of one to five years each for the larceny and felon-in-possession convictions, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction.  We affirm.

Defendant was convicted of fatally shooting the victim and stealing the victim's firearm inside a Clark gas station on the eastside of Detroit during the early morning of November 4, 2014.  The principal issue at trial was the identity of the shooter.  On the day of the shooting, store surveillance video cameras captured a man in a black hoodie, whose face could not be seen, inside the station cleaning and talking to the victim before the shooting.  An expert in video extraction testified that, at the time of the shooting, only the victim and the man in the hoodie were inside the small station.  The prosecution presented evidence that defendant was the only person who had helped the victim during his shift in the past.  Defendant's sister identified defendant as the man in the hoodie depicted in the surveillance video based on a variety of factors, including her recognition of the man's voice on the store's audio recording and the man's physical characteristics and mannerisms depicted in the store's video recording. However, she was not 100 percent certain of her identification.  The defense theory at trial was misidentification.  Both defendant and an alibi witness, defendant's former girlfriend, testified that defendant was at a different location at the time of the shooting.

On appeal, defendant first argues that the circuit court erred in denying his motion to quash the information.  He argues that the district court's decision to bind him over for trial was

-1-

based, in part, on the erroneous decision to admit his sister's testimony identifying the voice on the gas station's audio recording as defendant's voice. We disagree. Although defendant moved to quash the information in the circuit court based on credibility concerns about his sister's identification testimony, he did not argue, as he does on appeal, that the district court erred in admitting her voice identification testimony under MRE 901(b)(5) because she lacked sufficient knowledge of his voice. Defendant also failed to raise this specific issue in the district court, and thus the district court did not address it. Therefore, this issue is unpreserved and we review it for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

There was no plain error in the admission of defendant's sister's testimony identifying defendant's voice on the audio recording. Pursuant to MRE 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Identification of a voice may be established "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." MRE 901(b)(5). Voice identification testimony is competent evidence if it is "reasonably positive and certain," and is based on sufficient knowledge by the witness about the voice. *People v Hayes*, 126 Mich App 721, 725; 337 NW2d 905 (1983) (citation and quotation marks omitted). "[S]ome reason must appear to which the witness can attribute the ability to make the voice identification, of which familiarity and peculiarity are the most common, though not exclusive, examples." *Id*.

At both the preliminary examination and at trial, defendant's sister testified that in April 2015, she identified the voice of the man wearing the hoodie inside the Clark gas station as defendant's voice. She had previous knowledge of defendant's voice because they were biological siblings; defendant is 11 months older. Although as children they eventually lived separately with different foster families, they lived in the same neighborhood, maintained contact with each other, and had years where they attended the same middle and high schools. As adults, they remained in contact, and defendant lived with his sister for approximately one year from 2011 until 2012. Defendant then moved out of state, and his sister continued to communicate with him by phone, but ceased contact with him after he returned to Michigan in the winter of 2012. Because this evidence was sufficient to establish that defendant's sister was sufficiently familiar with defendant's voice to enable her to identify it, a proper foundation was established under MRE 901. Further, given defendant's sister's familiarity with defendant's voice, the fact that she had not spoken to defendant since the winter of 2012 does not compel a conclusion that she would not have been able to recognize his voice in April 2015. Accordingly, there was no plain error in the admission of defendant's sister's testimony identifying defendant's voice, and therefore, no basis for concluding that the district court erred in considering this identification evidence when binding defendant over for trial. Consequently, defendant has not shown that the circuit court abused its discretion in denying defendant's motion to quash the information on this basis.

Defendant also argues that the circuit court abused its discretion by denying his motion in limine to suppress his sister's identification testimony on the basis that it improperly invaded the province of the jury. Again, we disagree. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable

and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *Bynum*, 496 Mich at 623.

MRE 701 permits a lay witness to provide testimony in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." But " 'a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense.' " *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013), quoting *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). For this reason, if a witness is in no better position than the jury to identify a person in a video or still photograph, the witness's testimony identifying a defendant as the individual depicted in the video or photograph is generally inadmissible as an invasion of the province of the jury. *Fomby*, 300 Mich App at 52-53. Conversely, if a witness is in a better position than the jury to identify a person depicted in a video or photograph, the lay opinion testimony does not invade the province of the jury. *Id*. at 52; see also *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993). As this Court observed in *Fomby*, 300 Mich App at 52-53, the *LaPierre* Court offered two illustrations of when a lay witness may identify a defendant in a video or photograph at trial without invading the province of the jury. The *LaPierre* Court explained:

> Our cases upholding the use of testimony of this type have been limited to two types. The first type is those in which *the witness has had substantial and sustained contact with the person in the photograph*. The second type is those in which the defendant's appearance in the photograph is different from his appearance before the jury and the witness is familiar with the defendant as he appears in the photograph. [*LaPierre*, 998 F2d at 1465 (citations omitted; emphasis added).]

The " 'common thread' " binding these types of cases is the existence of a " 'reason to believe that the witness is more likely to identify correctly the person than is the jury.' " *Fomby*, 300 Mich App at 52, quoting *LaPierre*, 998 F2d at 1465.

As discussed earlier, the evidence showed that defendant's sister was substantially familiar with defendant and his voice. She acknowledged that the audio recording was not that clear, but stated that she was still able to identify defendant as the person in the video based on her substantial contact with him. She believed that defendant was the person in the video based on everything "collectively," including his mannerisms, height, and side profile. Given her superior familiarly with defendant, she was in a better position than the jury to determine whether defendant was the person in the surveillance recordings. It was undisputed that the perpetrator's face was not visible in the surveillance video, and the jury would not be familiar with the sound of defendant's voice. Therefore, defendant's sister's testimony did not invade the province of the jury, and her lay opinion testimony, which was rationally based on her familiarity with defendant and her perception of the video and audio recordings, was helpful to the jury's determination of a material fact at issue (identity), and thus was admissible under MRE 701. Consequently, the circuit court did not abuse its discretion in denying defendant's motion in limine to suppress the identification testimony on this basis.

Defendant relatedly argues that he was denied the effective assistance of counsel because defense counsel failed to seek an interlocutory appeal to challenge the circuit court's denial of his motions to suppress the identification testimony and quash the information. We disagree. As discussed, there was no error in the trial court's denial of either motion. Accordingly, an interlocutory appeal on either basis would not have been successful. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that he is entitled to a new trial because Sergeant Ford, who "was certified in video extraction . . . but not in identification," identified him as the person in the surveillance video, thus invading the province of the jury. As defendant acknowledges, he did not object to the challenged testimony below. Therefore, our review is limited to plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

At trial, Sergeant Ford testified that he extracted surveillance video from the four video cameras inside the gas station. The jury was shown clips of the video and still photographs while the sergeant narrated. During the prosecutor's questioning, the following exchanges occurred:

*Q.* Now, Sergeant Ford, in your review of the video, are you able to determine if the person that—whose face we can't see, who's in the dark hoodie, if he enters and exits the gas station, several times?

*A.* Yes.

*Q.* And did you record the times that he enters and exits?

*A.* Yes.

*Q.* Okay. And at the time of the event, at six, fifty-five in the morning, are you able to tell us, based on your scrutiny of the video, *who else was in the gas station at the time, other than [the victim]*?

*A.* *Just the defendant and [the victim].*

*Q.* So, that's the person in the hoodie, correct.

*A.* Yes.

*Q.* And at any point in time in this video, can you see a full frontal view of this person in the video?

*A.* No.

*Q.* What about the other people that came in the store, is there—can you see their faces?

*A.* Yes.

*Q.* So the person in the hoodie is the only person whose face you never see clearly?

*A.* Correct.

\* \* \*

*Q.* And they're still sweeping, per camera two, correct?

*A.* Yes.

*Q.* Can you see that person's face?

*A.* No.

*Q.* Showing you exhibit seventy-nine . . . ?

*A.* Yes.

*Q.* Okay. Now, this person in the dark hoodie, that we see in camera two and three, can you see his face?

*A.* No.

*Q.* Can you see what he's doing?

*A.* Yes.

\* \* \*

*Q.* And this is just eighty . . . which is just a continuation, to show where this person is going, correct?

*A.* Correct.

*Q.* Now, at this point in time, you see a little bit more of his head, correct?

*A.* Yes.

*Q.* And can you see his face?

*A.* Just the side view, but not much, no.

*Q.* Can you see if he has anything on his head?

*A.* Yes, a red hat.

*Q.* And for purposes of the record, we have eighty . . . which is a close-up of camera two . . . . And can you see the red hat, there?

*A.* Yes.

*Q.* But can you see the person's face?

*A.* No.

\* \* \*

*Q.* According to the time stamp, it says six, fifty-two . . . .

\* \* \*

*Q.* Now, this person that we see is also wearing a dark hoodie, correct?

*A.* Correct.

*Q.* Can you see his face?

*A.* No.

\* \* \*

*Q.* I'm going to show you exhibit ninety-nine. And this is after the event. Can you tell us what we're looking at, sir?

*A. The defendant running towards the front of the store.*

*Q.* Can you see his face, clearly?

*A.* No. [Emphasis added.]

We agree that Sergeant Ford's testimony referencing defendant as the person depicted in the surveillance video impermissibly invaded the province of the trier of fact. See MRE 701; *Fomby*, 300 Mich App 53. "[T]he issue of whether the defendant in the courtroom was the person pictured in a surveillance photo [is] a determination properly left to the jury." *Id*. at 52. There is no indication in the record, nor was there any argument, that the sergeant was in any better position than the trier of fact to correctly make the identification. *Id*. at 52-53.

However, we disagree that this error affected defendant's substantial rights. "Substantial rights are affected when the defendant is prejudiced, meaning the error affected the outcome of the trial." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). The primary purpose of the sergeant's testimony was to explain the events depicted in the surveillance video, not to establish the suspect's identity. Through the sergeant's testimony, the prosecutor sought to establish that only two people, the victim and the man in the black hoodie, were in the station at the time that the victim was shot, and that the man in the hoodie ran out of the station after the shooting. The sergeant explained the layout of the store, the surveillance equipment, the timeline of events, and the actions of the man in the hoodie. A review of the prosecution's case and the entirety of the sergeant's testimony support the conclusion that the sergeant's references to defendant were inadvertent. Indeed, the prosecutor repeatedly elicited the sergeant's admission

-6-

that he could not see the perpetrator's face. The prosecutor did not seek to develop the sergeant's reference to defendant; instead, the prosecutor redirected the sergeant's reference to defendant, returned to establishing the timeline and actions of the man in the hoodie, and did not mention the objectionable testimony in her closing argument. The record further discloses that there was never any suggestion by the prosecutor that the sergeant could identify the person in the surveillance video as defendant. In discussing the identification witnesses in closing argument, the prosecutor did not include Sergeant Ford, stating:

> Now, you may think that we only have one identification witness. But that's not true. We actually have four. We have four identification witnesses. Obviously, we have [defendant's sister]. But we also have Waseem Saleh, Khalil Alhariri and Ahmed Alhariri, because they tell you things that are circumstantial evidence. And the Judge will tell you that circumstantial evidence is just as crucial as direct evidence.

Given these circumstances, we conclude that the sergeant's references to defendant, although improper, did not substantially affect defendant's rights. Therefore, this claim must fail.

Defendant alternatively argues that defense counsel was ineffective for failing to object to Sergeant Ford's improper testimony. Because defendant did not raise an ineffective assistance claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. "[T]he defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). We agree that defense counsel could have offered a successful objection to Sergeant Ford's improper testimony. But for the reasons already explained, there is no reasonable probability that the jury relied on the challenged testimony in rendering its verdict. Accordingly, we are not persuaded that defendant was denied the effective assistance of counsel.

Next, defendant argues that he is entitled to a new trial because the prosecutor engaged in misconduct by intentionally eliciting testimony that defendant had been on parole. We disagree. As defendant acknowledges, he did not object to the prosecutor's conduct below. Therefore, this claim is unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

During the following exchange at trial, the prosecutor questioned defendant's sister about her contact with defendant as adults, during which defendant's sister mentioned that defendant had been on parole:

> *Q*. Was there ever a point in time, in your adult years, that you and [defendant] lived together?

*A*. Yes.

*Q*. When was that?

*A*. Um, I would say in approximately two thousand eleven; maybe two thousand and ten, like the end of two thousand ten.

\* \* \*

*Q*. And after [defendant] moved out, did you guys still have continued contact?

*A*. We did.

*Q*. And what kind of contact was that?

*A*. He ended up moving to West Virginia. He wanted to go to West Virginia after he left my home. And I drove him to West Virginia. We had some contact in—in West Virginia. He—

*Q*. (Interposing) *Was this phone contact or physical contact?*

*A*. Physical. I—I went to West Virginia. *He had to report to parole,* or—

*Q*. (Interposing) Okay. Okay. I want you to just—

*A*. (Interposing) I'm sorry.

*Q*. (Continuing)—follow my questions.

*A*. Sure. Physical contact. [Emphasis added.]

A prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 72; 732 NW2d 546 (2007). Contrary to defendant's argument, the prosecutor's question did not invite testimony that defendant had been on parole. Rather, the prosecutor asked defendant's sister if she had physical or phone contact with defendant while he was in West Virginia. Clearly, the prosecutor merely wanted to elicit defendant's sister's testimony regarding the nature and extent of her contact with defendant after he moved out of her home. Defendant's sister volunteered the additional information that defendant had to report for parole in West Virginia. The prosecutor did not seek to develop that testimony, but rather immediately redirected the witness and did not mention the objectionable testimony in closing argument. A witness's nonresponsive answer to a prosecutor's question does not constitute misconduct unless the prosecutor knew, encouraged, or conspired with the witness to provide the unresponsive testimony. See *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Because the remark was volunteered by defendant's sister and nothing in the record suggests that the prosecutor knew or encouraged her nonresponsive answer, defendant has not established prosecutorial misconduct. Further, the challenged testimony was not so egregious that any prejudicial effect could not have been alleviated by a curative

instruction, and, therefore, should not be considered a prejudicial error. See *People v Mahone*, 294 Mich App 208, 213; 816 NW2d 436 (2011).

We also reject defendant's related argument that defense counsel was ineffective for failing to object to the challenged testimony or request a mistrial. "[A]n unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). As we concluded earlier, the objectionable testimony was not elicited by the prosecutor's questioning, but was an unresponsive answer to a proper question, which is not grounds for a mistrial. Accordingly, defense counsel's failure to move for a mistrial was not objectively unreasonable. *Ericksen*, 288 Mich App at 201.

Regarding defense counsel's failure to object, absent any contrary evidence in the record regarding defense counsel's decision, defendant has failed to overcome the strong presumption that counsel's conduct was motived by sound trial strategy. *Armstrong*, 490 Mich at 290. It is probable that defense counsel made a reasonable and deliberate decision to refrain from objecting to avoid highlighting and placing undue emphasis on the challenged testimony, particularly where the reference was brief, the prosecutor immediately redirected the testimony, and the prosecutor did not attempt to capitalize on the objectionable content. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995) ("[T]here are times when it is better not to object and draw attention to an improper comment."); *People v Lawless*, 136 Mich App 628, 635; 357 NW2d 724 (1984) ("Defense counsel could properly have refrained from objecting to the brief questions where an objection could have emphasized the testimony in the minds of the jurors and where no further reference was made to the testimony."). Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

Defendant next argues that he is entitled to a new trial because the circuit court allowed the prosecutor to introduce improper rebuttal evidence through defendant's cell phone records. At trial, defendant complained that he only recently received the cell phone records, and he later made a general relevancy objection, which the trial court held in abeyance. He did not object to the introduction of the records on the basis that the evidence was improper rebuttal evidence. An objection based on one ground is insufficient to preserve an appellate challenge based on a different ground. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Therefore, defendant's appellate claim is unpreserved. We review unpreserved claims of evidentiary error for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

"Admission of rebuttal evidence is within the sound discretion of the trial judge and will not be disturbed absent a clear abuse of discretion." *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996). "Rebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *Id*. at 399. As stated by our Supreme Court:

> [T]he test of whether rebuttal evidence was properly admitted is not whether the evidence could have been offered in the prosecutor's case in chief, but, rather, whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant. As long as evidence is responsive to material

presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case in chief. [*Id.* (citations omitted).]

The sergeant's testimony, in which he detailed the contents of the cell phone activity between defendant and his former girlfriend, was responsive to defendant's alibi defense that he and his former girlfriend were together from approximately 6:00 p.m. on November 3 until the next morning, which encompassed the time of the shooting. As the prosecutor argued, defendant would not have had a reason to call his girlfriend at 12:34 a.m. if they were together. Thus, this rebuttal testimony was proper because it tended to contradict defendant's evidence that he and his former girlfriend were together during the night preceding the shooting.

On appeal, defendant does not mention the responsive nature of the rebuttal evidence related to the phone call between him and his former girlfriend, but rather complains that the prosecutor misused the records to establish that the shooting was premeditated because his phone was turned off at the time of the shooting. To the extent that the sergeant's rebuttal testimony was used to establish premeditation based on the lack of activity on defendant's cell phone, we agree that the testimony was not proper rebuttal evidence because it did not contradict evidence developed by the defense or answers elicited during cross-examination. Nonetheless, even if the rebuttal evidence was plain error for this purpose, defendant must also establish that his substantial rights were affected. *Carines*, 460 Mich at 752-753, 763-764. Defendant bears the burden of showing actual prejudice, *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006), and reversal is only warranted if the error resulted in the conviction of an actually innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings, *Carines*, 460 Mich at 752-753, 763-764.

There is no reasonable likelihood that this portion of the sergeant's rebuttal testimony, and the prosecutor's related argument, caused defendant's convictions. This evidence was of comparatively minor importance considering the totality of admissible evidence against defendant. Regarding premeditation, the prosecution argued, and presented supporting evidence, that the shooter purposely avoided being captured on the surveillance cameras from the moment he walked into the station until he fled nearly an hour later. In addition, other evidence indicated that two different weapons were used to fire multiple shots. Given the evidence regarding defendant's familiarity with the gas station, and thus the location of the surveillance cameras, and that two different weapons were used, the challenged portion of the rebuttal testimony was of little consequence. Consequently, defendant is not entitled to new trial on this basis.

Defendant also argues that the evidence was insufficient to establish his identity as the person who committed the charged crimes. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational tier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Identity is an essential element in a criminal prosecution, *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt, *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *Nowack*, 462 Mich at 400. The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew. *Id.*

Viewed in a light most favorable to the prosecution, the evidence was sufficient to support defendant's identity as the person who shot the victim. The evidence, as explained by an expert in video extraction, disclosed that the shooting occurred at 6:54 or 6:55 a.m., near the back of the small gas station. At the time, only two people—the victim and a man in a black hoodie—were in the store. Thus, it was reasonable for the jury to infer that the man in the hoodie was the person who shot the victim. According to the expert, surveillance video showed that after the man in the hoodie entered the gas station at 6:09 a.m., he immediately engaged in cleaning activities in the station and also later conversed with the victim. Witnesses testified that defendant often helped the victim clean the store, and the store employee who worked the shift immediately before the victim identified defendant as the only person he ever saw cleaning up the store and assisting the victim. From the evidence identifying defendant as the only person who assisted the victim and the evidence that the man in the hoodie performed the same chores that defendant performed when he assisted the victim, the jury could find that defendant was the person shown on the surveillance camera wearing the black hoodie. In addition, defendant's sister testified that the man in the hoodie was defendant, although she was not 100 percent certain. Her identification testimony was based on her recognition of the man's voice as defendant's voice, as well as her recognition of the man's physical features and mannerisms as being similar to defendant's. Apart from this identification evidence, the prosecution presented evidence that the surveillance cameras captured full frontal images of all the people who came into the gas station, but the cameras never captured a frontal view of the man in the hoodie, which supported an inference that the man in the hoodie was familiar with the layout of the store and location of the surveillance cameras. Viewed in a light most favorable to the prosecution, the evidence was sufficient to support finding beyond a reasonable doubt that defendant was the man in the hoodie who shot the victim.

Defendant argues that the evidence was not sufficient to show that he was the man in the hoodie because his sister was not confident in her identification, he presented an alibi defense, and there was no physical evidence linking him to the crimes. In making these arguments, however, defendant ignores that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution, *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012), and that the deferential standard of review is the same whether the evidence is direct or circumstantial, *Nowack*, 462 Mich at 400. Defendant's challenges are related to the weight of the evidence rather than its sufficiency. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). Indeed, these same challenges were presented to the jury during trial. This Court "will not interfere with the jury's determinations regarding weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Even where a witness's identification of the defendant is less than positive, the question remains one for the trier of fact. *People v Abernathy*, 39 Mich App 5, 7;

197 NW2d 106 (1972). Applying these standards, the question of the shooter's identity was properly submitted to the jury, and we will not disturb the jury's determination that the evidence established defendant's identity as the shooter.

In a Standard 4[1] brief, defendant argues that he was deprived of due process when the prosecution filed a second complaint against him. After defendant's first preliminary examination, the circuit court quashed the information and dismissed the charges due to insufficient evidence. Following the dismissal, the prosecution filed a second complaint charging the same offenses. Defendant argues that the filing of this second complaint deprived him of due process because the prosecution did not produce any newly discovered evidence and the case was assigned to a different judge. We reject this claim of error. Issues of constitutional law are reviewed de novo. *People v Vaughn*, 491 Mich 642, 650; 821 NW2d 288 (2012). "The proper interpretation and application of a court rule is a question of law that is reviewed de novo." *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012).

MCR 6.110(F) provides as follows:

If, after considering the evidence, the court determines that probable cause does not exist to believe either that an offense has been committed or that the defendant committed it, the court must discharge the defendant without prejudice to the prosecutor initiating a subsequent prosecution for the same offense or reduce the charge to an offense that is not a felony. Except as provided in MCR 8.111(C)[2], *the subsequent preliminary examination must be held before the same judicial officer and the prosecutor must present additional evidence to support the charge.* [Emphasis added.]

---

[1] Supreme Court Administrative Order No. 2004-6, Standard 4

[2] MCR 8.111(C), which is not applicable to the facts of this case, provides as follows:

(1) If a judge is disqualified or for other good cause cannot undertake an assigned case, the chief judge may reassign it to another judge by a written order stating the reason. To the extent feasible, the alternate judge should be selected by lot. The chief judge shall file the order with the trial court clerk and have the clerk notify the attorneys of record. The chief judge may also designate a judge to act temporarily until a case is reassigned or during a temporary absence of a judge to whom a case has been assigned.

(2) If a judge is reassigned under a concurrent jurisdiction plan or a family court plan, the successor judge will be assigned all cases filed after the date of reassignment, any pending matters, and postjudgment matters that relate to disposed cases. The chief judge shall submit a local administrative order under MCR 8.112 identifying the revised caseload distribution.

In addition to the provisions of MCR 6.110(F), "subjecting a defendant to repeated preliminary examinations violates due process if the prosecutor attempts to harass the defendant or engage in 'judge-shopping.' " *People v Robbins*, 223 Mich App 355, 363; 566 NW2d 49 (1997).

Defendant has not established a due process violation. First, contrary to what defendant asserts, the prosecutor was only required to present additional evidence, not newly discovered evidence, at the second preliminary examination. *Id*. at 361. In accordance with this rule, the prosecution presented additional, non-cumulative evidence at the second preliminary examination in the form of witnesses that did not previously testify. One witness, the victim's coworker, testified that he regularly worked the shift before the victim and that he would see defendant assisting the victim, including cleaning and filling the coolers, and that defendant was the only person whom he had ever seen working around the gas station with the victim. Another witness testified that he regularly walked to the gas station and would see defendant working with the victim, doing things like filling coolers, and "posting" around the station. The testimony of these witnesses provided additional circumstantial evidence that defendant was the only person with the victim in the station at the time of the shooting, thereby providing additional evidence to assist in establishing defendant's identity as the perpetrator.[3] There is no indication that the prosecutor was seeking to harass defendant by refiling the charges, thereby subjecting defendant to a second preliminary examination for an improper purpose. To the contrary, the prosecutor presented additional evidence that was not presented at the first preliminary examination in an apparent attempt to address deficits raised by the circuit court when granting defendant's previous motion to quash the information.

Next, as defendant correctly observes, the second preliminary examination was not held before the same judge. However, MCR 6.110(F) does not require the second preliminary examination to be held before the same judicial officer. By its plain terms, MCR 6.110(F) applies to a defendant who has been discharged after the preliminary examination based on a finding of lack of probable cause. In this case, defendant was bound over after the first preliminary examination, and the circuit court, not the district court, was the court that dismissed the charges. Thus, MCR 6.110(F) was not applicable.

Moreover, there is no reason to conclude that the prosecutor engaged in judge-shopping or had any control or influence on the assignment of the case to a different judge. There was some discussion about the lack of availability of the judge who presided over the first preliminary examination. But even if the prior judge was available, there is no apparent reason why the prosecutor would have wanted to "shop" for a different judge because, again, the prior judge who considered the evidence at defendant's first preliminary examination determined that probable cause existed to bind defendant over for trial. Thus, there is no basis for concluding that the judge initially assigned to the case would have ruled any differently, particularly where

---

[3] In addition, although Sergeant Ford testified at the first preliminary examination, his testimony at the second preliminary examination provided additional details regarding the gas station's layout, based on the surveillance video recording.

additional evidence supporting defendant's identity was presented, or that the prosecution engaged in judge shopping. Accordingly, defendant is not entitled to any relief on this basis.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron