*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 16, 2020

Plaintiff-Appellee,

v

No. 344384
Wayne Circuit Court
LC No. 17-004803-01-FC

DEMARCO ANTOINIO WARREN,

Defendant-Appellant.

Before: SAWYER, P.J., and LETICA and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b, for which the trial court sentenced him to 20 to 30 years in prison. We affirm.

## I. FACTUAL BACKGROUND

Defendant's conviction arises from the August 2, 1996 sexual assault of a 20-year-old woman while she was at a friend's home in Detroit. The victim testified that a male intruder who obscured his head with a towel woke her and demanded her money. After she told him that she had no money, the man took her to the attic where he forcibly raped her. He took her back downstairs to join her friends who knelt with pillowcases over their heads, instructed her to kneel, and placed a pillowcase over her head. The victim heard a gunshot and the men left the room which allowed the victim to flee to the attic, climb out a window, and jump to the ground. The perpetrators escaped. The victim went to the hospital where personnel treated her and obtained a sexual assault kit. The victim could not identify her assailant. The case remained unsolved until years later the victim's sexual assault kit was analyzed and it revealed the presence of DNA from an unknown male contributor. In 2015, during a search of a national DNA database, the police determined that the DNA from the male contributor matched defendant's DNA profile leading to his arrest and conviction.

## II. CONFRONTATION

Defendant first argues that the trial court violated his constitutional right of confrontation by the admission of a Northville Laboratory DNA report and associated evidence because the scientist who prepared the report did not testify at trial. Because defendant did not challenge the the admission of the evidence at trial and did not raise a constitutional claim of error, he failed to preserve this issue, and we review it for plain error affecting defendant's substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). As explained in *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, alteration, and citations omitted):

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence.

In every criminal trial, the federal and state constitutions protect a defendant's right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker* (*On Remand*), 273 Mich App 56, 60-61; 728 NW2d 902 (2006). In *People v Nunley*, 491 Mich 686, 698; 821 NW2d 642 (2012), quoting *People v Crawford*, 458 Mich 376, 388 n 6; 582 NW2d 785 (1998), our Supreme Court explained that a testimonial statement constitutes a " 'solemn declaration or affirmation made for the purpose of establishing or proving some fact' " and " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]' " " 'The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness.' " *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001), quoting *People v Frazier* (*After Remand*), 446 Mich 539, 543; 521 NW2d 291 (1994).

In *Nunley*, our Supreme Court considered two cases, *Melendez-Diaz v Massachusetts*, 557 US 305; 129 S Ct 2527; 174 L Ed 2d 314 (2009), and *Bullcoming v New Mexico*, 564 US 647; 131 S Ct 2705; 180 L Ed 2d 610 (2011). Our Supreme Court stated:

> In *Melendez-Diaz*, the United States Supreme Court considered whether "certificates of analysis" were testimonial when they reported the results of a forensic analysis showing that material seized by the police and connected to the defendant was cocaine. The Court characterized the certificates as "quite plainly affidavits," which fall within the core class of testimonial statements and are

defined as "declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths" and "are incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Given that the fact at issue was whether the substance found in the defendant's possession was, as the prosecution claimed, cocaine, then this was the testimony that the analysts would have been expected to provide if called as witnesses at trial. The certificates were thus "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'"

In addition, the Court reasoned that the certificates were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," given that "under Massachusetts law the sole purpose of the [certificates] was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance." Further, "the analysts were aware of the [certificates'] evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the [certificates] themselves."

In *Bullcoming v New Mexico*, the United States Supreme Court considered whether "the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." The Court rejected the argument that the testimony of a "surrogate" expert was a constitutionally permissible substitute for the testimony of the analyst who had actually conducted the test. The Court also rejected the argument that the report was not testimonial, analogizing it to the certificates of analysis in *Melendez-Diaz* and pointing out that "formalities attending the 'report of blood alcohol analysis' are more than adequate to qualify [the analyst's] assertions as testimonial" and that "[t]he absence of notarization does not remove his certification from Confrontation Clause governance." Further, Justice Ginsburg, joined by Justice Scalia, rejected the argument that this "unbending application of the Confrontation Clause . . . would impose an undue burden on the prosecution," reiterating that the Confrontation Clause " 'may not [be] disregard[ed] at . . . our convenience.'" [*Nunley*, 491 Mich at 700-702 (citations omitted).]

Defendant challenges the evidence in the report from the Northville Laboratory, which created his DNA profile from his known 2017 buccal swab upon which the prosecution's expert witness, a Michigan State Police Crime Lab expert in forensic DNA analysis and serology, relied when comparing defendant's DNA profile to the profile created from the sexual assault kit. An objective witness would reasonably believe that the report would be available for use at a later trial. *Nunley*, 491 Mich at 698. Therefore, the report qualified as a testimonial statement. *Nunley*, 491 Mich at 698, 700-702. The scientist who created the Northville Laboratory report, therefore, was required to testify at trial to protect defendant's right of confrontation. The report's unnamed author, however, did not testify. The prosecution's expert witness's testimony could not properly substitute for the necessary testimony by the report's author. Consequently, the introduction of the Northville Laboratory report into evidence violated defendant's right of confrontation and the

testimony of the prosecution's expert witness who relied on the Northville Laboratory report in her comparison of the DNA profile from defendant's known buccal swab to the DNA profile from the sexual assault kit should have been excluded. See *People v Frazier*, 478 Mich 231, 247; 733 NW2d 713 (2007). Therefore, defendant has established that the trial court plainly erred.

However, even though the admission of the Northville Laboratory report and the prosecution's expert witness's accompanying testimony amounted to plain error, defendant cannot establish that the error affected his substantial rights, i.e., that the error resulted in the conviction of an actually innocent defendant. The prosecution presented the testimony of two other witnesses, Jennifer Himrod, an expert in forensic DNA analysis, and Joshua Strong, an officer who works in the Michigan State Police CODIS DNA Data Basing Section. Himrod testified in detail regarding her analysis of the victim's sexual assault kit and presented her report that identified the presence of an unknown male's DNA to the prosecution's expert witness. Strong testified that defendant's DNA was added and searchable on the CODIS database since May 2004 and that in 2015 he discovered a DNA database association between the DNA vaginal swab in the victim's sexual assault kit and the database sample for defendant which he reported. The prosecution's expert relied on Himrod's and Strong's analyses. Defendant does not challenge the admission of Himrod's and Strong's testimonies or the supporting evidence on which they relied. Their testimony and accompanying reports provided independent evidence comparing the male DNA sample recovered from the victim's sexual assault kit to defendant's DNA profile and that the DNA matched. Further, evidence established that the Northville Laboratory analysis and ensuing report were performed to confirm the results already determined by the Michigan State Police experts' analyses by Himrod and Strong. Therefore, although the trial court plainly erred by admitting the Northville Lab report and testimony regarding it, that evidence was merely cumulative because independent testimony subject to cross-examination and additional admissible forensic evidence established defendant's guilt. Accordingly, defendant is not entitled to reversal of his conviction.

In a related argument, defendant argues that defense counsel provided him ineffective assistance by failing to object to the Northville Laboratory report's "DNA match evidence" on the basis of the Confrontation Clause. We disagree.

Defendant failed to preserve this issue for review by moving for a new trial or an evidentiary[1] hearing. Accordingly, we review this claim for errors apparent on the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). Under Michigan law, effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Defense counsel's performance must be measured against an objective standard of reasonableness and without benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). This Court does not substitute its judgment for that of counsel in a matter of trial strategy. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999). On appeal, defendant bears the burden of establishing that defense counsel provided ineffective assistance by showing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance,

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), citing *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

In this case, defense counsel's failure to object to the Northville Laboratory report constituted performance that fell below an objective standard of reasonableness. Nevertheless, defendant cannot establish the requisite prejudice, i.e., that "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The Northville Laboratory report served to confirm the known results of the unchallenged independent analysis of the victim's sexual assault kit and defendant's DNA match. Accordingly, there is no reasonable probability that the result of defendant's trial would have been different if counsel had objected. Therefore, defendant cannot establish that defense counsel denied him effective assistance.

## III. BIASED JUROR

Defendant next argues that the trial court abused its discretion by denying his request to dismiss Juror No. 14 for cause after she revealed that she had been the victim of sexual abuse when she was a child and was not sure if she could be impartial. We disagree.

We review a trial court's ruling on challenges for cause for an abuse of discretion. *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). Even if the trial court abused its discretion by denying defendant's challenge for cause, reversal is not required unless defendant shows that " '(1) the court improperly denied a challenge for cause, (2) the aggrieved party exhausted all peremptory challenges, (3) the party demonstrated the desire to excuse another subsequently summoned juror, and (4) the juror whom the party wished later to excuse was objectionable.' " *People v Legrone*, 205 Mich App 77, 81; 517 NW2d 270 (1994), quoting *Poet v Traverse City Osteopathic Hosp*, 433 Mich 228, 241; 445 NW2d 115 (1989).

By the beginning of the second day of jury selection, both parties had three peremptory challenges remaining. After the trial court denied defendant's request to dismiss Juror No. 14 for cause, defendant utilized peremptory challenges to dismiss Juror No. 14 and Juror No. 10. After the last two spots were filled on the jury, neither party utilized another peremptory challenge. Thus, defendant had one peremptory challenge remaining at the end of voir dire. Because Juror No. 14 did not serve on the jury, defendant did not exhaust all of his peremptory challenges, and there is no evidence that defendant desired to excuse another subsequently summoned juror and could not, even if the trial court abused its discretion by refusing to excuse Juror No. 14 for cause, reversal is not required. *Legrone*, 205 Mich App at 81.

IV. MOTION FOR MISTRIAL

Defendant next argues that the trial court abused its discretion by denying his motion for a mistrial following Detective Kelly Dupuis's testimony that the victim was not a "consensual partner." We disagree.

This Court reviews a trial court's ruling on a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). Even if this Court concludes that the trial court abused its discretion in denying a motion for mistrial, "[e]rror requiring reversal results only where a trial judge's denial of a defendant's motion for mistrial is so grossly in error as to deprive a defendant of a fair trial or to amount to a miscarriage of justice." *People v Holly*, 129 Mich App 405, 415; 341 NW2d 823 (1983); see also *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (a preserved, nonconstitutional error requires reversal only if "it shall affirmatively appear that the error asserted has resulted in a miscarriage of justice").

The prosecutor asked Detective Dupuis the following questions about her interview with defendant related to the victim's photograph:

> *Q.* And did you show him any photographs when you spoke to him?
>
> *A.* I did.
>
> *Q.* Were they photographs of the complainant in this case?
>
> *A.* Yes.

Detective Dupuis testified that she showed defendant photographs of the victim from 1996 and 2003. The prosecutor continued her questioning:

> *Q.* When you showed him the two photos of her did you ask him if he recognized the person in the photos?
>
> *A.* Yes, I did.
>
> *Q.* And what did he say?
>
> *A.* He did not recognize her.
>
> *Q.* . . . What effect does it have on your investigation when someone says that—when [defendant] said that he did not recognize her?
>
> *A.* What effect does it have?
>
> *Q.* Yes.
>
> *A.* It would mean it wasn't a consensual partner.

After defense counsel objected, the trial court sustained the objection and instructed the jury to "disregard the prosecutor's question as well as the witness's answer, please."

"The ruling on a motion for a mistrial is committed to the sound discretion of the trial court. The test is whether the defendant has been deprived of a fair trial." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990) (citation omitted). A trial court should exercise its power to grant a mistrial with great caution and only do so when there is "an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Schaw*, 288 Mich App at 236 (citation and quotation marks omitted). Stated differently, a mistrial is only appropriate where the error is so egregious that its prejudicial effect can be removed in no other way. *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

Initially, we are not persuaded that the challenged testimony was improper in the first instance. MRE 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." MRE 704.

Detective Dupuis's opinion—that the victim was not a consensual partner because defendant did not recognize her photographs—was rationally based on her perception of the interview of defendant and the ongoing investigation in which the victim denied having consensual sex with any of the men in the lineup photographs, which included defendant. The detective held the opinion because, in the context of a criminal sexual assault investigation, a suspect whose DNA was recovered from the sexual assault kit could be excluded from the investigation if the suspect was a consensual partner and defendant's responses to the detective's questions ruled out consensual sexual conduct between defendant and the victim. The detective's opinion testimony had the ability to help the jury understand the investigation process.

Even if the detective improperly offered the testimony, such testimony did not warrant a mistrial. "As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *Hackney*, 183 Mich App at 531. In this case, the record does not reflect that the prosecutor intended to elicit testimony for an improper purpose or to provoke a mistrial. The record also reflects that the trial court provided the jury a curative instruction that they were to disregard the prosecutor's question and the detective's response. Further, the trial court instructed the jury: "As jurors you must decide what the facts of this case are. This is your job and nobody else's. . . . To sum up, it is your job to decide what the facts of the case are, to apply the law as I give it to you and in that way to decide the case." The trial court later instructed the jury: "At times during the trial I have excluded evidence that was offered or stricken testimony that was heard. Do not consider those things in deciding the case. Make your decision only on the evidence that I let in and nothing else." "Jurors are presumed to follow the court's instructions, and instructions are

presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). Curative instructions can alleviate possible prejudice from isolated, improper comments such that a mistrial is not required. *People v Waclawski*, 286 Mich App 634, 709-710; 780 NW2d 321 (2009). The trial court did not abuse its discretion in this case by denying defendant's motion for a mistrial. The trial court properly ordered the testimony stricken and ordered that the jury disregard the evidence. The trial court's curative instruction, coupled with its other instructions, sufficed to protect defendant's right to a fair trial. Accordingly, defendant was not entitled to a mistrial and has failed to establish that a miscarriage of justice occurred warranting reversal and a new trial.

V. SCORING OF OFFENSE VARIABLE 2

Defendant also argues that the trial court improperly assessed 25 points for Offense Variable 2 (OV2) of the former advisory judicial sentencing guidelines. Because defendant's crime occurred before January 1, 1999, the former judicial sentencing guidelines applied. See *People v Reynolds*, 240 Mich App 250, 253-254; 611 NW2d 316 (2000). "[B]ecause the recommended ranges found in the judicial guidelines were not the product of legislative action, a sentencing judge was not necessarily obliged to impose a sentence within those ranges." *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). The record in this case reflects that the trial court properly considered the former advisory judicial sentencing guidelines for determining defendant's minimum sentence. Under OV2 of those sentencing guidelines, 25 points could be assessed where the victim suffered a physical attack or injury or the defendant's conduct was designed to increase substantially the fear and anxiety that the victim suffers during the offense. Defendant argues that the trial court improperly predicated the assessment of points for OV2 on the victim's injury during her escape after the sexual assault had been completed, and not specifically related to the offense for which the jury convicted him, contrary to *People v McGraw*, 484 Mich 120, 127; 771 NW2d 655 (2009), and that he is entitled to resentencing. We disagree.

The former judicial guidelines do not have the force of law because they did not have a legislative mandate. *People v Mitchell*, 454 Mich 145, 175; 560 NW2d 600 (1997). Therefore, "a guidelines error does not violate the law." *Id*. Miscalculation of a variable does not constitute a legal error. *Id*. Our Supreme Court explained in *Mitchell* that an appellate challenge to a judge's calculation of a sentencing variable "on the basis of his discretionary interpretation of the unchallenged facts . . . does not state a cognizable claim for relief." *Id*. at 176. The Court further explained, "There is no juridical basis for claims of error based on alleged misinterpretation of the guidelines, instructions regarding how the guidelines should be applied, or misapplication of guideline variables." *Id*. at 176-177. "Appellate courts are not to interpret the guidelines or to score and rescore the variables for offenses and prior record to determine if they were correctly applied." *Id*. at 177. "Thus, application of the guidelines states a cognizable claim on appeal only where (1) a factual predicate is wholly unsupported, (2) a factual predicate is materially false, and (3) the sentence is disproportionate." *Id*.

In this case, defendant does not challenge the trial court's factual finding that the victim was injured during her escape attempt or that the victim suffered fear and anxiety during the perpetration of the rape. The record indicates that evidence established factual predicates for assessing 25 points for OV2. Regardless of the trial court's rationale for assessing the points, the record evidence supported doing so. Further, defendant does not argue, nor could he, that his

sentence is disproportionate under the proportionality test articulated in *People v Milbourn*, 435 Mich 630, 656-657; 461 NW2d 1 (1990). Accordingly, defendant is not entitled to resentencing.

Affirmed.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ James Robert Redford