*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER MICHAEL NOGALSKI,

Defendant-Appellant.

UNPUBLISHED
July 21, 2025
9:30 AM

No. 368668
Wayne Circuit Court
LC No. 21-004663-01-FH

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

Defendant, Christopher Michael Nogalski, appeals as of right his jury-trial conviction of assault with a dangerous weapon ("felonious assault"), MCL 750.82(1). On appeal, defendant argues the evidence was insufficient to convict him of felonious assault because he did not have the intent to place the complainant in reasonable fear of a battery; the trial court abused its discretion by denying a mistrial after the complainant repeatedly referred to alleged other acts of domestic violence; and that he was denied a fair trial because the prosecutor improperly commented on his decision not to testify during closing argument. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant lived with Jessica Nogalski, his wife at the time of this matter, and their two daughters. Starting on February 2, 2021 and carrying into the early morning the following day, the couple had an argument, during which defendant took a knife from on top of their bed "and just started slicing up his arms." Defendant also "started poking [the knife] into his stomach and sliding it across his neck." When Jessica grabbed her phone to "look[] up the National Suicide Hotline," he "start[ed] screaming that I'm a traitor and how dare you."

Jessica left the bedroom and went into the bathroom to get away from defendant. Defendant followed her to the bathroom and banged on the door while Jessica pretended to use the toilet by flushing it. Jessica next attempted to "escape" defendant by going to the kitchen under the pretenses of getting a glass of water. However, defendant followed Jessica into the kitchen and started sharpening the knife, standing about 4 or 5 feet away from her. After she told him, "This is ridiculous, . . . you need to stop," he responded by saying, "[y]ou know I can get you, too.

-1-

You know I can get you, too." Jessica eventually was able to get to the basement to call the police and report that defendant was suicidal. Police arrived and transported defendant to a hospital for mental health treatment. Defendant was arrested two days later after Jessica reported additional information about her fight with defendant, and he was charged with felonious assault, under MCL 750.82(1).

Prior to trial, the prosecution filed a notice of its intent to introduce evidence of his alleged earlier acts of domestic violence, under MCL 768.27(b) and MRE 404(b). Defendant objected, arguing it would be unfairly prejudicial to defendant and "merely serve to inflame the jury . . . ." The trial court agreed and ruled the other acts evidence inadmissible.

At trial, Jessica responded to several questions from the prosecutor, which indirectly referenced defendant's alleged other acts.[1] First, the prosecutor asked Jessica whether her argument "continue[d] for the rest of the day[.]" Jessica replied: "It never ended. It was—it never ends." Second, after the prosecutor asked whether defendant did "something unusual" during the argument, Jessica said his behavior was "[n]ot unusual but—for him, but it was he took—so he has knives." Third, after the prosecutor asked Jessica what her reaction was to defendant's threat, Jessica replied, "I should have been more scared than what I was, but I'm so sick of it because I was used to it . . . ." Jessica further explained, "I was used to that kind of behavior . . . ." Fourth, the prosecutor asked whether Jessica and her friend looked for attorneys "in reaction to what had happened that day?" Jessica responded that the friend "was just surprised I finally did something and said something and finally called the police, yeah." After Jessica answered this question, defense counsel objected and moved for a mistrial. The trial court denied the motion, but instructed the jury to "disregard any testimony about he keeps—this keeps happening," since "[t]here is no evidence about what the 'this keeps happening' is . . . ." The prosecution rested after Jessica concluded her testimony, and defense counsel did not call any witnesses.

During closing arguments, defense counsel challenged Jessica's credibility by telling the jury that "[s]he has a reason to misrepresent. She has a reason to exaggerate. She has a reason to lie about the events that took place." In addition to implicating that Jessica's desire to seek a divorce from defendant undermined her credibility, defense counsel also stated that the prosecutor did not put on any evidence to corroborate Jessica's testimony or weigh her credibility.

The prosecutor rebutted defense counsel, in part, by arguing to the jury:

> My role is to present our witness and have you consider her testimony. And the reality is there was no evidence presented that contradicted her testimony. The evidence is her testimony and her answers. It is not counsel's questions, it's not my questions.

* * *

---

[1] Defendant asserts that Jessica also stated "I'm used to it" during her testimony, in reference to the incident giving rise to the charge in this case. This statement is not reflected in the trial transcript on the page cited by defendant, but did appear later in her testimony.

Did you hear any evidence contradicting [Jessica's] testimony? No. She testified as to what happened on that day. She testified that [defendant] is the one that committed this offense; that he picked up a knife, that he cut himself. That he followed her. That he stood five feet from her sharpening this weapon and saying I can get you, too.

During its deliberations, the jury asked: "Does the absence of refuting testimony mean we should assume the Defendant does not refute what the witness said on the stand?" The jury also asked: "Can we consider the absence of testimony, reports, audio session [sic], video files, et cetera from third parties . . . ?" The trial court reinstructed the jury:

The Defendant does not have to testify or produce evidence or do anything. The prosecutor has the burden of proving beyond a reasonable doubt every element of the crimes. The Defendant has a right to remain silent and you cannot use that silence against him.

The jury ultimately convicted defendant of felonious assault, and this appeal followed.

## II. SUFFICIENCY OF EVIDENCE

Defendant first argues the evidence was insufficient to convict defendant of felonious assault because he did not have the intent to place Jessica in reasonable fear of a battery. We disagree.

This Court reviews defendant's challenge to the sufficiency of the evidence de novo. *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). "[T]his Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). Under this deferential standard, we make all reasonable inferences and credibility determinations in favor of sustaining the conviction. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). "The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). Here, the evidence of defendant's intent to put Jessica in reasonable fear of a battery is sufficient to sustain his conviction of felonious assault.

MCL 750.82(1) states: "[A] person who assaults another person with a . . . knife . . . or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony . . . ." The elements of felonious assault are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013) (quotation marks and citation omitted). "Michigan generally defines an assault as either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Meissner*, 294 Mich App 438, 453-454; 812 NW2d 37 (2011) (quotation marks and citation omitted). "A battery is an intentional, unconsented and harmful or offensive touching of the person of another . . . ." *Id*. at 454 (quotation marks and citation omitted; omission in original).

-3-

A jury can infer intent from a defendant's actions, not just his or her statements. *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011). Direct evidence of intent is generally unavailable, therefore, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

The totality of defendant's actions provides sufficient circumstantial evidence from which a jury could infer defendant intended to place Jessica in reasonable fear of a battery. Jessica testified that defendant took a knife and, while lying in bed next to her, started to cut himself on various parts of his body, including his neck. Defendant then followed her into the bathroom and banged on the door while yelling at her. After Jessica attempted to distance herself from defendant by going to the kitchen for a glass of water, defendant again followed her, began to sharpen the knife he had been just using to cut himself, and threatened Jessica by telling her that he could "get" her, too. This is all evidence sufficient for a jury to conclude that defendant intended to place Jessica in reasonable fear of a battery.

Defendant's contention that his "get you" statement to Jessica was insufficient to demonstrate he had the necessary intent to convict him of felonious assault discounts the context in which the statement was made. At the time defendant made the statement, he already cut himself multiple times on his arms, stomach, and neck. He followed Jessica to the bathroom, banging on the door and yelling at her. Defendant began sharpening the knife, which he only moments before used to cut himself, when he followed Jessica into the kitchen. He then made the threatening statement in question while he held the knife and stood less than 4 to 5 feet away from Jessica. True, he did not overtly attack Jessica, but the totality of his conduct during the argument leading to his threat to get her provided sufficient evidence from which the jury could infer defendant placed Jessica in reasonable fear of being stabbed or cut with the knife.

Nor do we accept defendant's suggestion that Jessica's two-day delay in reporting the totality of defendant's conduct to the police—during which she spoke to divorce attorneys and a domestic violence agency—is grounds for vacating defendant's conviction. These facts, which defendant argued to the jury, concern witness credibility, not the sufficiency of the evidence establishing intent. Assessing witness credibility is a job for the jury, not a reviewing court. *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021) (citation omitted). A reviewing court shall not interfere with the fact-finder's role of deciding the credibility of the witnesses. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). We will not do so in this case. Jessica's testimony, therefore, provided sufficient evidence for the jury to infer defendant intended to place her in reasonable fear of a battery.

## III. OTHER ACTS EVIDENCE

Defendant also asserts the trial court abused its discretion by denying a mistrial, after Jessica indirectly referred to alleged other acts of domestic violence during direct questioning from the prosecutor. According to defendant, this inadmissible testimony was improperly elicited by the prosecutor and extremely prejudicial, necessitating a new trial. We disagree.

This Court reviews a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Boshell*, 337 Mich App 322, 335; 975 NW2d 72 (2021). "An abuse of

discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*. at 339 (quotation marks and citation omitted). "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citation omitted). "[T]he moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id*. (quotation marks and citation omitted).

Defendant was not denied a fair trial by Jessica's testimony indirectly referencing inadmissible, alleged prior acts of domestic violence because the record demonstrates that the prosecutor did not intentionally elicit the reference to defendant's prior alleged acts of domestic violence. An unresponsive answer to a proper question is typically insufficient to find error. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). In most cases, "[a] prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Thus, "[a]s a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990) (an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial).[2] Such is the case here.

Nor does the record suggest that the prosecutor knew in advance that Jessica would give the unresponsive answers which indirectly referenced defendant's alleged prior bad acts, or that the prosecutor conspired with or encouraged Jessica to so testify. To the contrary, the prosecutor reminded Jessica to focus her testimony solely to the events at issue in the trial. Defendant, therefore, has not established prosecutorial misconduct and none of the noted exchanges provide grounds for holding the trial court abused its discretion by denying a mistrial.

Additionally, the trial court instructed the jury to disregard Jessica's testimony that "this keeps happening" because there was no evidence as to what conduct she referenced. Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). Defendant fails to demonstrate that the trial court's instruction did not cure any error that arose from Jessica's prior ambiguous and indirect references to prior acts of domestic violence. See *Solloway*, 316 Mich App at 201 (recognizing that the law requires a fair trial, not a perfect one). For these reasons, we hold that the trial court did not abuse its discretion by denying defendant's motion for mistrial.

---

[2] "Although published opinions of this Court decided before November 1, 1990, are not strictly binding, MCR 7.215(J)(1), they are nevertheless precedential, MCR 7.215(C)(2), and they are thus afforded significantly more deference than would be given to unpublished cases." *People v Spaulding*, 332 Mich App 638, 657 n 5; 957 NW2d 843 (2020).

## IV. PROSECUTORIAL ERROR

Defendant argues the prosecutor engaged in misconduct by improperly commenting during closing argument on defendant's decision not to testify, which resulted in the denial of a fair trial.

"To preserve a claim of prosecutorial misconduct,[3] the defendant must make a timely and specific objection to the conduct at trial." *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019). Defendant's trial counsel did not object when the prosecutor made the comment in his rebuttal closing argument that there was no evidence contradicting Jessica's testimony. Whether the prosecutor's comment constitutes prosecutorial misconduct and denied defendant a fair trial, therefore, is not preserved.

Where an issue is not preserved, as in this case, this Court reviews defendant's claim for "plain error affecting substantial rights." *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To meet the third element, a defendant must show the error affected the outcome of the trial court. *Id*. Even if all three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-64 (quotation marks and citation omitted; second alteration in original).

When a defendant raises a claim of prosecutorial error based on remarks at trial, this Court "examin[es] the remarks in context, to determine whether the defendant received a fair and impartial trial." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). See also *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020) (explaining that courts should examine the entire record and evaluate a prosecutor's remarks in context). Prosecutors also have "wide latitude" to argue based on the evidence presented, and reasonable inferences from that evidence. *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001). In cases where a prosecutor may overstep, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements . . . ." *People v Bailey*, 310 Mich App 703, 722; 873 NW2d 855 (2015) (quotation marks and citation omitted).

However, "[a] prosecutor may not imply in closing argument that the defendant must prove something . . . ," nor may a prosecutor "comment on the defendant's failure to present evidence . . . ." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). These statements and arguments are impermissible because they attempt to shift the burden of proof, which at all times rests with the prosecution. *Id*. at 464. A prosecutor can argue and state that "the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence." *Id*. Prosecutors are also permitted to comment on their own witnesses' credibility

---

[3] See *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (explaining that the term "prosecutorial misconduct" has become a term of art often used to describe any error committed by the prosecution but should only be used in the most extreme cases).

during closing argument, especially when the question of guilt depends on which witness to believe. *People v Isrow*, 339 Mich App 522, 529-530; 984 NW2d 528 (2021). Such is the case here.

When viewed in context, the prosecutor's rhetorical comment to the jury that Jessica's testimony was undisputed did not impermissibly attempt to shift the burden of proof to defendant. The prosecutor's statement rebutted arguments made during defendant's closing arguments. In his closing argument, defendant's trial counsel noted Jessica's testimony was uncorroborated by any physical evidence or other witness testimony. He asserted Jessica had "reason to lie" and was "manipulating the system." By asking the jury whether they "hear[d] any evidence contradicting [Jessica's] testimony," the prosecutor merely argued that the prosecution's inculpatory evidence (i.e., Jessica's testimony) was undisputed. The prosecutor's comment when taken in context demonstrates that there is no plain error affecting defendant's substantial rights in this case.

This result is consistent with prior decisions of this Court. For example, in *People v Savage*, 327 Mich App 604, 615-616; 935 NW2d 69 (2019), this Court held a prosecutor's remarks "about what defendant might have said but didn't say," when he responded to a police officer's question, did not shift the burden of proof. (Quotation marks omitted.) Likewise, in *Fyda*, 288 Mich App at 464, while this Court expressed "unease" with the prosecutor's statement that "[t]here's been no defense to the crime itself," the *Fyda* Court held that the statement did not shift the burden of proof. (Quotation marks omitted.) Notably, the defense in *Fyda* argued a witness "manipulated the system for his own benefit," *id.*, just as the defense in this matter argued Jessica lied and misled the jury. The prosecutor's rhetorical comment to the jury was not an improper response to defendant's argument, since he did not imply defendant faced any burden of proof.

Even if the prosecutor's remark prejudiced defendant, the trial court's jury instructions cured any prejudice. During its deliberations, the jury asked: "Does the absence of refuting testimony mean we should assume the Defendant does not refute what the witness said on the stand?" Even assuming this question showed the prosecutor's remark misled the jury, the trial court reinstructed the jury on defendant's presumption of innocence. It noted: "The Defendant does not have to testify or produce evidence or do anything. The prosecutor has the burden of proving beyond a reasonable doubt every element of the crimes." This instruction sufficiently cured any prejudice resulting from the prosecutor's rebuttal argument, even if he had improperly shifted the burden of proof. The prosecutor did not err by noting Jessica's testimony was uncontradicted, and defendant was not denied a fair trial.

## V. CONCLUSION

For these reasons, we affirm the judgment of the trial court.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock